IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

JAMISON J. SHEFTS, an Individual, )
)
    Plaintiff, )
)
    v. ) Case No. 10 CV 1104
)
JOHN PETRAKIS, an Individual, )
)
    Defendant. )

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, JAMISON J. SHEFTS ("Shefts"), by and through his attorneys, Elias, Meginnes, Riffle & Seghetti, P.C., and as and for his Verified Complaint against the Defendant JOHN PETRAKIS ("Petrakis"), states as follows:

### BACKGROUND

**A.    The Parties, Jurisdiction and Venue**

1. Shefts is the founder, President and Chief Executive Officer of Access2Go, Inc., a telecommunications company ("Access2Go").

2. Shefts holds thirty (30%) percent of the stock in Access2Go.

3. Petrakis is a Vice-President of Access2Go.

4. Petrakis owns thirty (30%) percent of the stock in Access2Go.

5. Petrakis is an Illinois resident.

6. This case (specifically Count I) arises under the laws of the United States, specifically the Federal Wire and Electronic Communications Interception Statute (18 U.S.C. and 18 U.S.C. §2520).

7. This Court may properly exercise supplemental jurisdiction over any claims in this Complaint asserting violations of state statutes and common law pursuant to 28 U.S.C. §1367.

8. This Court has personal jurisdiction over Defendant because he is a resident of Illinois. Exercising personal jurisdiction over Defendant will fully comply with all due process requirements.

9. Venue is proper in the Central District of Illinois, because this is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. §1391(b).

**B.  Nature of the Case**

10. This is an action for blatant violations by Petrakis of Shefts' privacy rights which are protected by the Federal Wire and Electronic Communications Interception Statute (18 U.S.C. §2511 and 18 U.S.C. §2520), and Illinois State Statute (720 ILCS §5/14-2). Petrakis utilized "spyware" to intercept Shefts' private communications which were conveyed by e-mail and text messages, including sensitive communications between Shefts and his counsel in litigation which is pending between Shefts, Petrakis, and others, as well as a certain divorce proceeding. The interception was intentional, methodical, and persistent.

**C.  The Oppression Suit**

11. Between February, 2006, and the present, Petrakis and Kevin Morgan, a Vice-President of Access2Go ("Morgan"), who now collectively own 60% of the stock of Access2Go have oppressed Shefts in his capacity as a shareholder, director and employee of Access2Go to the point where he is no longer allowed in the Access2Go main office and is unable to perform any of his duties as an officer and employee of Access2Go.

2

12. On November 14, 2008, Shefts filed for arbitration with the American Arbitration Association regarding, in part, Petrakis's and Morgan's oppressive actions against Shefts in his capacity as a shareholder, director and employee of Access2Go (Case No. 51 494 01446 08).

13. On November 14, 2008, Shefts filed a Complaint in Peoria County, Illinois, requesting interim relief from the oppressive actions taken by Petrakis and Morgan against Shefts in his capacity as a shareholder, director and employee of Access2Go (Peoria County Case No. 08 CH 696).

14. The legal actions referenced in paragraphs 12 and 13 are hereinafter referred to as the "Underlying Lawsuit".

15. Petrakis, Morgan and John Tandeski ("Tandeski"), an agent of Access2Go, as well as a ten (10%) percent shareholder of Access2Go stock, hired counsel to represent each of them collectively in the Underlying Lawsuit.

**D. Eavesdropping/Interception of Electronic Communications**

16. During the Underlying Lawsuit, Shefts became concerned that Petrakis and Morgan might be reading his private email communications on his Access2Go email account, despite the fact that they had no authorization or permission to do so.

17. As a result, Shefts began using his Yahoo email account and his Blackberry handheld device for private communications with third parties, including attorney-client privileged communication between him and his attorneys regarding the Underlying Lawsuit and his divorce case.

18. During the course of the Underlying Lawsuit, Shefts was approached by Tandeski. Tandeski informed Shefts that Petrakis and Morgan had directed and authorized the

3

installation of spyware on many of Access2Go's office computers, including Shefts' office computer, without authorization of the Access2Go Board or permission of Shefts.

19. According to Tandeski, Petrakis had been monitoring Shefts' actions by reading his work account emails, text messages received on his personally-owned Blackberry handheld device, and Yahoo account emails, including attorney-client privileged emails between Shefts and his counsel regarding strategy in the Underlying Lawsuit.

20. According to Tandeski, in or about July, 2008, Petrakis informed Tandeski that he had spyware installed on the computers at Access2Go in order to monitor employee activity.

21. On numerous occasions, Petrakis and Heidi Huffman (an employee of Access2Go) mentioned to Tandeski personal information about Access2Go employees. On these occasions, when Tandeski asked how they obtained the personal information regarding the activities of the Access2Go employees, including Shefts, they would state, "you don't want to know."

22. Tandeski was informed by Huffman on numerous occasions between late 2007 and throughout 2008 that Petrakis spent a large percentage of his time at the Access2Go office using his Access2Go computer to spy on Access2Go employees' activities and to obtain personal information about the Access2Go employees.

23. Huffman, under the direction of Petrakis, also used the spyware on Access2Go's computers to obtain personal information about Access2Go employees.

24. On one occasion, while discussing the Underlying Lawsuit, Huffman informed Tandeski that, if asked about what she knew regarding the issues involved in the Underlying Lawsuit, she would tell the truth but "might not remember it the same way" as it actually happened.

4

25. In or about February, 2009, Tandeski, believing that Petrakis had been improperly intercepting emails from Shefts' Yahoo email account, confronted Petrakis regarding whether he had been accessing Shefts' personal Yahoo email account in order to determine Shefts' daily activities and strategy in regards to the Underlying Lawsuit.

26. In response to Tandeski's question, Petrakis admitted to Tandeski that he had been intercepting emails from Shefts' Yahoo email account.

27. On information and belief, Petrakis used the spyware software to determine the keystrokes Shefts used to enter his Yahoo account login and password. By determining the keystrokes Shefts used to access his Yahoo account, Petrakis was able to recreate Shefts' login and password information and use the information to access Shefts' accounts.

28. One such email that Petrakis had obtained from Shefts' Yahoo email account was between Shefts and his counsel, Lane G. Alster. A copy of the email is filed as an exhibit hereto as Exhibit A. The email attached as Exhibit A is filed under seal, as it is an attorney-client privileged document. Shefts does not waive any attorney-client privilege as it relates to the information contained in Exhibit A.

29. At the bottom of the copy of the email communication filed as Exhibit A is a reference to Petrakis that establishes Exhibit A was printed from Petrakis's computer at Access2Go.

30. Soon after confronting Petrakis about his improper actions using the spyware software, Petrakis and Morgan took actions to phase Tandeski out from his duties at Access2Go.

31. In or about June, 2009, Tandeski was permanently suspended from his duties as an officer and employee of Access2Go.

5

32. In July, 2009, Tandeski sent an email to counsel for Tandeski, Petrakis and Morgan in the Underlying Lawsuit regarding the improper actions taken by Petrakis. A copy of the email delivered by Tandeski to his counsel is attached hereto as Exhibit B.

33. On March 26, 2010, Shefts confirmed, through an investigation performed by a forensic expert, that spyware was on his computer during 2008 and was uninstalled from his computer before it was delivered to Shefts' personal residence.

### E. Destruction of Access2Go Documentation

34. On information and belief, in addition to his improper use of the spyware software, Petrakis also took actions to destroy Access2Go records.

35. According to Tandeski, in late 2008 counsel for Petrakis, Morgan and Tandeski in the Underlying Lawsuit instructed Petrakis and Morgan that a litigation hold should be placed on all Access2Go records as a result of the Underlying Lawsuit.

36. In early 2009, counsel for Petrakis, Morgan and Tandeski in the Underlying Lawsuit reminded Petrakis, Morgan and Tandeski that a litigation hold should be placed on all Access2Go records.

37. Shortly thereafter, Petrakis obtained a shredder and numerous memory sticks.

38. On information and belief, Petrakis placed the shredder and memory sticks in his office and used the shredder to destroy Access2Go records and transferred the records to the memory sticks.

39. In or about August, 2009, Petrakis and Morgan obtained a new server for Access2Go.

40. On information and belief, the old Access2Go server that was used throughout 2008 and 2009 was removed from Access2Go's office.

6

F.  **Failure to Comply with Discovery Order in Underlying Lawsuit**

41.  On April 6, 2009, Shefts served Petrakis and Kevin Morgan with his First Set of Interrogatories to Defendants and First Set of Requests to Produce to Defendants.

42.  Shefts' counsel made efforts to obtain voluntary compliance with discovery obligations on November 30, 2009, by sending a letter to Petrakis's counsel requesting that the discovery requests be answered within fourteen (14) days. Thereafter, Shefts filed a Motion to Compel.

43.  On March 8, 2010, at a hearing on the Motion to Compel, Petrakis and Kevin Morgan agreed to supply responses to the First Set of Interrogatories and First Set of Requests to Produce by April 5, 2010. That agreement was set forth in an Order on that same date.

44.  By April 5, 2010, Petrakis and Kevin Morgan had still failed provide answers to the First Set of Interrogatories and First Set of Requests to Produce, in violation of the March 8, 2010 Order. On that date, counsel for Petrakis and Kevin Morgan asserted that Shefts was going to receive a large box of documents in response to the discovery requests by the end of the week.

45.  As of April 21, 2010, Petrakis has still failed to provide the required discovery in response to the First Set of Interrogatories and First Set of Requests to Produce in the Underlying Lawsuit.

**COUNT I**
**Violation of the Federal Wire and Electronic**
**Communications Interception Statute (18 U.S.C. §2511 and 18 U.S.C. §2520)**

46.  Shefts restates and realleges paragraphs 1-45 of the Background as and for this paragraph 46 of Count I of the Complaint.

7

47. Petrakis knowingly and intentionally directed and was aware of the installation of software on Shefts' computer for the purpose of intercepting electronic communications between Shefts and third parties.

48. Petrakis intercepted electronic communications contained in Exhibit A, between Shefts and his attorney, from Shefts' Yahoo email account.

49. On information and belief, Petrakis intercepted numerous additional electronic communications between Shefts and third parties from Shefts' Yahoo email account, without authorization or consent from any party to the communication. .

50. Petrakis intercepted numerous electronic communications between Shefts and third parties from Shefts' personally-owned blackberry device. Access2Go had no ownership of the blackberry device and did not pay any service charges or fees with respect to that device.

51. Petrakis intercepted numerous electronic communications between Shefts and third parties from Shefts' computer located at Access2go.

52. Petrakis did not have the consent or authorization of Shefts or any other party to such electronic communications, to intercept the aforementioned electronic communications.

53. As a result of Petrakis's actions, Shefts has been damaged.

WHEREFORE, Shefts respectfully requests that this honorable Court enter a judgment in favor of Shefts as follows:

A. A permanent injunction enjoining Petrakis from viewing Shefts' personal and work email without the consent of Shefts;

B. An award of damages constituting the actual loss to Shefts caused by the illegal interception of electronic communications by Petrakis, currently estimated to be in excess of $50,000;

8

C. An award of punitive damages due to the willful and wanton misconduct of Petrakis;

D. Attorney's fees pursuant to 18 U.S.C. 2520(b)(3);

E. Any other and further relief deemed appropriate under the circumstances.

## COUNT II
### Violation of 720 ILCS §5/14-2

54. Shefts restates and realleges paragraphs 1-45 of the Background as and for this paragraph 54 of Count II of the Complaint.

55. Petrakis knowingly and intentionally directed and was aware of the installation of software on Shefts' computer for the purpose of intercepting electronic communications between Shefts and third parties.

56. Petrakis intercepted electronic communications contained in Exhibit A, between Shefts and his attorney, from Shefts' Yahoo email account.

57. On information and belief, Petrakis intercepted numerous additional electronic communications between Shefts and third parties from Shefts' Yahoo email account, without authorization or consent from any party to the communication. .

58. Petrakis intercepted numerous electronic communications between Shefts and third parties from Shefts' personally-owned blackberry device. Access2Go had no ownership of the blackberry device and did not pay any service charges or fees with respect to that device.

59. Petrakis intercepted numerous electronic communications between Shefts and third parties from Shefts' computer located at Access2go.

60. Petrakis did not have the consent or authorization of Shefts or any other party to such electronic communications, to intercept the aforementioned electronic communications.

61. As a result of Petrakis's actions, Shefts has been damaged.

WHEREFORE, Shefts respectfully requests that this honorable Court enter a judgment in favor of Shefts as follows:

A. A permanent injunction enjoining Petrakis from viewing Shefts' personal and work email without the consent of Shefts;

B. An award of damages constituting the actual loss to Shefts caused by the improper interception of electronic communications by Petrakis, currently estimated to be in excess of $50,000;

C. An award of punitive damages due to the willful and wanton misconduct of Petrakis;

D. Attorney's fees;

E. Any other and further relief deemed appropriate under the circumstances.

### JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES WHICH MAY BE PROPERLY SUBMITTED TO A JURY.

Respectfully submitted,

By: /s/ Robert M. Riffle
Robert M. Riffle
ELIAS, MEGINNES, RIFFLE & SEGHETTI, P.C.
416 Main St., Suite 1400
Peoria, IL 61602
(309) 637-6000
*Counsel for Plaintiff*

410-220

## VERIFICATION

Under penalties as provided by law pursuant to the Federal Rules of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and those matters beyond my direct knowledge for which affidavits of John Tandeski and James Feehan have been provided, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Jamison J. Shefts

SUBSCRIBED and SWORN to
before me this 19th day of
April, 2010.

_____
NOTARY PUBLIC
410-0375

OFFICIAL SEAL
JANET M. ARVIDSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-31-2013