IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAMISON J. SHEFTS, an Individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10 CV 1104 |
| v. ) | |
| ) | |
| JOHN PETRAKIS, an Individual, ) | |
| KEVIN MORGAN, an Individual, ) | |
| and HEIDI HUFFMAN, an ) | |
| Individual, ) | |
| ) | |
| Defendant. ) | |

### FIRST AMENDED VERIFIED COMPLAINT

NOW COMES the Plaintiff, JAMISON J. SHEFTS ("Shefts"), by and through his attorneys, Elias, Meginnes, Riffle & Seghetti, P.C., and as and for his First Amended Verified Complaint against the Defendants JOHN PETRAKIS ("Petrakis"), HEIDI HUFFMAN ("Huffman") and KEVIN MORGAN ("Morgan") (collectively, the "Defendants"), states as follows:

### BACKGROUND

**A.    The Parties, Jurisdiction and Venue**

1.    Shefts is the founder, President and Chief Executive Officer of Access2Go, Inc., a telecommunications company ("Access2Go").

2.    Shefts holds thirty (30%) percent of the stock in Access2Go.

3.    Petrakis is a Vice-President of Access2Go.

4.    Petrakis owns thirty (30%) percent of the stock in Access2Go.

5.    Petrakis is an Illinois resident.

6.    Morgan is a Vice-President of Access2Go.

7. Morgan owns thirty (30%) percent of the stock in Access2Go.

8. On information and belief, Morgan is a resident of California.

9. Huffman is the assistant to Petrakis.

10. Huffman is an Illinois resident.

11. This case (specifically Counts I, III and IV) arises under the laws of the United States, specifically the Federal Electronic Communications Privacy Act (EPCA) (18 U.S.C. 2511 and 18 U.S.C. §2520), the Stored Communications Act (SCA) (18 U.S.C. §2701), and the Computer Fraud and Abuse Act, (CFAA), (18 U.S.C. §1030).

12. This Court may properly exercise supplemental jurisdiction over any claims in this Complaint asserting violations of state statutes and common law pursuant to 28 U.S.C. §1367.

13. This Court has personal jurisdiction over Petrakis and Huffman because they are residents of Illinois. Exercising personal jurisdiction over Petrakis and Huffman will fully comply with all due process requirements.

14. This Court has personal jurisdiction over Morgan because he has done substantial business in Illinois, attended numerous meetings in Illinois which concerned the subject matter of this case, was a resident of Illinois during the time that most of the events giving rise to this case occurred, and is involved in a business located in Peoria, Illinois on a nearly daily basis.

15. Venue is proper in the Central District of Illinois, because this is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." 28 U.S.C. §1391(b).

**B.    Nature of the Case**

16.    This is an action for blatant violations by Defendants of Shefts' privacy rights which are protected by the Federal Electronic Communications Privacy Act (FCPA) (18 U.S.C. §2511 and 18 U.S.C. §2520) the Stored Communications Act (SCA) 18 U.S.C. 2701, the Computer Fraud and Abuse Act (CFAA) 18 U.S.C. §1030, and Illinois State Statute (720 ILCS §5/14-2). Defendants utilized "spyware" and other impermissible means and devices to intercept, view, and copy Shefts' private communications which were conveyed by e-mail and text messages, including sensitive communications between Shefts and his counsel in litigation which is pending between Shefts, Petrakis, and Morgan, as well as a certain divorce proceeding. Defendants also instructed a third party to impermissibly install spyware on Plaintiff's computer. Defendants also impermissibly accessed and viewed e-mails on Plaintiff's computer and from Plaintiff's e-mail account. The foregoing actions were intentional, methodical, and persistent.

**C.    The Oppression Suit**

17.    Between February, 2006, and the present, Petrakis and Morgan have oppressed Shefts in his capacity as a shareholder, director and employee of Access2Go to the point where he is no longer allowed in the Access2Go main office and is unable to perform any of his duties as an officer and employee of Access2Go.

18.    On November 14, 2008, Shefts filed for arbitration with the American Arbitration Association regarding, in part, Petrakis's and Morgan's oppressive actions against Shefts in his capacity as a shareholder, director and employee of Access2Go (Case No. 51 494 01446 08).

19.    On November 14, 2008, Shefts filed a Complaint in Peoria County, Illinois, requesting interim relief from the oppressive actions taken by Petrakis and Morgan against

Shefts in his capacity as a shareholder, director and employee of Access2Go (Peoria County Case No. 08 CH 696).

20. The legal actions referenced in paragraphs 18 and 19 are hereinafter referred to as the "Underlying Lawsuit".

21. Petrakis, Morgan and John Tandeski ("Tandeski"), an agent of Access2Go, as well as a ten (10%) percent shareholder of Access2Go stock, hired counsel to represent each of them collectively in the Underlying Lawsuit.

### D. Eavesdropping/Interception/Viewing of Electronic Communications

22. During the Underlying Lawsuit, Shefts became concerned that Petrakis and Morgan might be reading his private email communications on his Access2Go email account, despite the fact that they had no authorization or permission to do so.

23. As a result, Shefts began using his Yahoo email account and his Blackberry handheld device for private communications with third parties, including attorney-client privileged communications between him and his attorneys regarding the Underlying Lawsuit and his divorce case.

24. During the course of the Underlying Lawsuit, Shefts was approached by Tandeski. Tandeski informed Shefts that Petrakis and Morgan had directed and authorized the installation of spyware on many of Access2Go's office computers, including Shefts' office computer, without authorization of the Access2Go Board or permission of Shefts.

25. According to Tandeski, Petrakis, Morgan and Huffman had been monitoring Shefts' actions by intercepting, reading and/or accessing his work account emails, text messages received on his personally-owned Blackberry handheld device, and Yahoo account emails, including attorney-client privileged emails between Shefts and his counsel regarding strategy in

4

the Underlying Lawsuit. Tandeski also informed Shefts that Defendants had obtained information generated in connection with his then pending divorce case, including information regarding Shefts' assets, liabilities, and expenses.

26. According to Tandeski, in or about July, 2008, Tandeski became aware that Petrakis had spyware installed on the computers at Access2Go in order to monitor employee activity. Tandeski did not know, at that time, that the spyware had been used to access Shefts' Yahoo account.

27. On numerous occasions, Petrakis and Huffman mentioned to Tandeski personal information about Access2Go employees. On these occasions, when Tandeski asked how they obtained the personal information regarding the activities of the Access2Go employees, including Shefts, they would state, "you don't want to know."

28. Tandeski was informed by Huffman on numerous occasions between late 2007 and throughout 2008 that Petrakis spent a large percentage of his time at the Access2Go office using his Access2Go computer to spy on Access2Go employees' activities and to obtain personal information about the Access2Go employees.

29. Huffman, under the direction of Petrakis, also used the spyware on Access2Go's computers to obtain personal information about Access2Go employees.

30. On one occasion, while discussing the Underlying Lawsuit, Huffman informed Tandeski that, if asked about what she knew regarding the issues involved in the Underlying Lawsuit, she would tell the truth but "might not remember it the same way" as it actually happened.

31. In or about February, 2009, Tandeski, believing that Petrakis had been improperly intercepting emails from Shefts' Yahoo email account, confronted Petrakis regarding whether he

had been accessing Shefts' personal Yahoo email account in order to determine Shefts' daily activities and strategy in regards to the Underlying Lawsuit.

32. In response to Tandeski's question, Petrakis admitted to Tandeski that he had been intercepting emails from Shefts' Yahoo email account.

33. On information and belief, Petrakis used the spyware software to determine the keystrokes Shefts used to enter his Yahoo account login and password. By determining the keystrokes Shefts used to access his Yahoo account, Petrakis was able to recreate Shefts' login and password information and use the information to access Shefts' accounts.

34. One such email that Petrakis had obtained from Shefts' Yahoo email account was between Shefts and his counsel, Lane G. Alster. A copy of the email was attached as Exhibit A to the original Complaint. The email which was attached as Exhibit A to the original Complaint was filed under seal, as it is an attorney-client privileged document. Shefts does not waive any attorney-client privilege as it relates to the information contained in Exhibit A.

35. At the bottom of the copy of the email communication filed as Exhibit A is a reference to Petrakis that establishes Exhibit A was printed from Petrakis's computer at Access2Go.

36. On information and belief, Morgan and Huffman had knowledge of all the actions taken by Petrakis in order to intercept, read, and/or access the electronic communications between Shefts and third parties. Morgan and Huffman actually and materially participated in reviewing Shefts' e-mails and text messages with third parties without permission of Shefts.

37. Soon after confronting Petrakis about his improper actions using the spyware software, Petrakis and Morgan took actions to phase Tandeski out from his duties at Access2Go.

38. In or about June, 2009, Petrakis and Morgan permanently suspended Tandeski from his duties as an officer and employee of Access2Go.

39. In July, 2009, Tandeski sent an email to counsel for Tandeski, Petrakis and Morgan in the Underlying Lawsuit regarding the improper actions taken by Petrakis. A copy of the email delivered by Tandeski to his counsel was attached to the original Complaint as Exhibit B and was filed under seal. Petrakis and Morgan were provided copies of that e-mail.

40. On March 26, 2010, Shefts confirmed, through an investigation performed by a forensic expert, that spyware was on his computer during 2008 and was uninstalled from his computer before it was delivered to Shefts' personal residence.

**E. Employee Manual**

41. In approximately early 2008, Petrakis and Morgan placed Tandeski in charge of creating an employee manual for Access2Go (the "Employee Manual").

42. On July 2, 2008, during a meeting of the Access2Go Board of Directors, Petrakis, Morgan and Tandeski, with Shefts abstaining, voted in favor of approving the Employee Manual. A copy of the Employee Manual is attached hereto as Exhibit C.

43. Section 6.7 of the Employee Manual provides, in pertinent part, that, "[n]o employee may access another employee's computer, computer files, or electronic mail messages without prior authorization from the Board of Directors."

44. The Access2Go Board of Directors has never authorized any employee of Access2Go, including but not limited to Petrakis, Morgan and/or Huffman, to access another employee's computer, computer files or electronic mail messages.

### F. Interception of Text Messages by Morgan

45. In September, 2008, Petrakis and Morgan called a meeting of the shareholders of Access2Go in order to vote on whether or not to terminate Shefts as an employee of Access2Go.

46. Petrakis and Morgan claimed that they had grounds for terminating Plaintiff pursuant to the Stockholder Agreement and Jamison J. Shefts Employment Agreement.

47. At the September 16, 2008 stockholder meeting, no vote to terminate was taken.

48. After the September 16, 2008 stockholder meeting, Morgan provided Tandeski with a stack of e-mails that Petrakis and Morgan intended to use as grounds for termination of Shefts.

49. Upon review of the emails provided by Morgan, Tandeski realized that a large number of the emails were actually text messages that Morgan had intercepted, accessed, viewed, and printed out, which had been sent to or by Shefts' from his personally-owned Blackberry device and his Access2Go e-mail account. Tandeski subsequently delivered the stack of electronic communications between Shefts and third parties to Shefts.

### G. Destruction of Access2Go Documentation

50. In addition to their improper use of the spyware software, Petrakis also took actions to destroy Access2Go records.

51. According to Tandeski, in late 2008, counsel for Petrakis, Morgan and Tandeski in the Underlying Lawsuit instructed Petrakis and Morgan that a litigation hold should be placed on all Access2Go records as a result of the Underlying Lawsuit.

52. In early 2009, counsel for Petrakis, Morgan and Tandeski in the Underlying Lawsuit reminded Petrakis, Morgan and Tandeski that a litigation hold should be placed on all Access2Go records.

53. Shortly thereafter, Petrakis obtained a shredder and numerous memory sticks.

54. In the fall of 2009 Petrakis placed the shredder and memory sticks in his office and used the shredder to destroy Access2Go records and transferred the records to the memory sticks.

55. Petrakis procured the assistance of Access2Go's computer technicians to help transfer data to the memory sticks and delete the data from Access2Go's computers.

56. On information and belief, Morgan authorized the transfer and subsequent destruction of Access2Go records by Petrakis as described above.

**H.   Failure to Comply with Discovery Order in Underlying Lawsuit**

57. On April 6, 2009, Shefts served Petrakis and Morgan with his First Set of Interrogatories to Defendants and First Set of Requests to Produce to Defendants.

58. Shefts' counsel made efforts to obtain voluntary compliance with discovery obligations on November 30, 2009, by sending a letter to Petrakis's and Morgan's counsel in the Underlying Lawsuit requesting that the discovery requests be answered within fourteen (14) days. Thereafter, Shefts filed a Motion to Compel.

59. On March 8, 2010, at a hearing on the Motion to Compel, Petrakis and Morgan agreed to supply responses to the First Set of Interrogatories and First Set of Requests to Produce by April 5, 2010. That agreement was set forth in an Order on that same date.

60. By April 5, 2010, Petrakis and Morgan had still failed to provide answers to the First Set of Interrogatories and First Set of Requests to Produce, in violation of the March 8, 2010 Order. On that date, counsel for Petrakis and Morgan asserted that Shefts was going to receive a large box of documents in response to the discovery requests by the end of the week.

61. As of April 21, 2010, Petrakis has still failed to provide the required discovery in response to the First Set of Interrogatories and First Set of Requests to Produce in the Underlying Lawsuit.

62. On May 5, 2010, the Court in the underlying case issued a Rule to Show Cause Order with respect to the failure to produce documents and respond to discovery.

**I. Subsequent Discovery of Additional Facts and Corroborating Information**

63. Subsequent to the filing of the original Verified Complaint in this case, and the initial hearing on the Motion for Temporary Restraining Order, Shefts and his counsel met with employees of Klaus Radio, Inc., d/b/a Integrated Computer Resources ("Klaus").

64. During the meeting between Shefts and Klaus, the Klaus employees, specifically including Shawn Patton, provided the following information:

   a) That Klaus, at the direction of Petrakis and Huffman, had installed SpectorPro Spyware on the computer of Shefts, as well as other Access2Go employees.

   b) That Klaus, at the direction of Petrakis and Huffman, had instructed Petrakis and Huffman how to access emails of Shefts and other employees of Access2Go by using the "Administrator" password, which each of them had, to have unlimited access to all Access2Go employees email accounts.

   c) That Klaus, at the direction of Petrakis and Huffman, in fall of 2009, had assisted Petrakis and Huffman in the process of exporting massive amounts of data and files from Access2Go computers and servers, that the data and files were placed on thumb drives, and that the data was permanently deleted.

d) That Klaus had assisted Huffman in obtaining the capability for Huffman and Petrakis to intercept Blackberry text messages sent and received by Shefts and other Access2Go employees.

e) That Klaus, at the instruction of Huffman and Petrakis, had created a "dummy account" to intercept and make a copy on the Access2Go server of every email sent by or received by Shefts, so that Petrakis and Huffman could view these emails.

f) That Klaus had instructed Morgan regarding the procedures he needed to follow to access Shefts' emails.

g) That within the past 2 weeks, Huffman had contacted Klaus for the express purpose of having Klaus explain to her the steps necessary to enable her to use her new laptop computer to access the emails of Jamison Shefts.

65. On information and belief, Morgan was aware of and had authorized all of the actions taken by Petrakis and Huffman, as described above.

66. Plaintiff has already expended an amount substantially in excess of $10,000 in investigating and attempting to remedy the damages caused by the unauthorized acts of Defendants, as alleged in this complaint, including an amount in excess of $5,000 for the service of a forensic computer expert.

67. Shefts' Yahoo account and his Access2Go e-mail account were both password protected.

68. Petrakis, Morgan, and Huffman each accessed, intercepted, viewed, and read e-mails and text messages sent to or by Shefts to third parties without the permission of either party to those communications.

## COUNT I
### Violation of the Federal Wire and Electronic Communications Privacy Act (18 U.S.C. §2511 and 18 U.S.C. §2520)

69. Shefts restates and realleges paragraphs 1-68 of the Background as and for this paragraph 69 of Count I of the Complaint.

70. Defendants knowingly and intentionally directed and were aware of the installation of spyware software on Shefts' computer for the purpose of intercepting electronic communications between Shefts and third parties.

71. Petrakis intercepted electronic communications contained in Exhibit A, between Shefts and his attorney, from Shefts' Yahoo email account.

72. On information and belief, Defendants intercepted numerous additional electronic communications between Shefts and third parties from Shefts' Yahoo email account, without authorization or consent from any party to the communication.

73. Defendants intercepted numerous electronic communications between Shefts and third parties from Shefts' personally-owned blackberry device. Access2Go had no ownership of the Blackberry device and did not pay any service charges or fees with respect to that device.

74. Defendants intercepted numerous electronic communications between Shefts and third parties from Shefts' computer located at Access2Go.

75. Defendants did not have the consent or authorization of Shefts or any other party to such electronic communications, to intercept the aforementioned electronic communications.

76. As a result of Defendants' actions, Shefts has been damaged.

WHEREFORE, Shefts respectfully requests that this honorable Court enter a judgment in favor of Shefts as follows:

A. A permanent injunction enjoining Defendants from viewing Shefts' personal and work email without the consent of Shefts;

B. An award of damages constituting the actual loss to Shefts caused by the illegal interception of electronic communications by Defendants, currently estimated to be in excess of $50,000;

C. An award of punitive damages due to the willful and wanton misconduct of Defendants;

D. Attorney's fees pursuant to 18 U.S.C. 2520(b)(3);

E. Any other and further relief deemed appropriate under the circumstances.

### COUNT II
### Violation of 720 ILCS §5/14-2

77. Shefts restates and realleges paragraphs 1-68 of the Background as and for this paragraph 77 of Count II of the Complaint.

78. Defendants knowingly and intentionally directed and were aware of the installation of software on Shefts' computer for the purpose of intercepting electronic communications between Shefts and third parties.

79. Petrakis intercepted, accessed, and viewed electronic communications contained in Exhibit A, between Shefts and his attorney, from Shefts' Yahoo email account.

80. On information and belief, Defendants intercepted, accessed, and viewed numerous additional electronic communications between Shefts and third parties from Shefts' Yahoo email account, without authorization or consent from any party to the communication.

81. Defendants intercepted, accessed, and viewed numerous electronic communications between Shefts and third parties from Shefts' personally-owned blackberry

device. Access2Go had no ownership of the blackberry device and did not pay any service charges or fees with respect to that device.

82. Defendants intercepted, accessed, and viewed numerous electronic communications between Shefts and third parties from Shefts' computer located at Access2Go, and from the Access2Go server.

83. Defendants did not have the consent or authorization of Shefts or any other party to such electronic communications, to intercept, access and view the aforementioned electronic communications.

84. As a result of Defendants' actions, Shefts has been damaged.

WHEREFORE, Shefts respectfully requests that this honorable Court enter a judgment in favor of Shefts as follows:

A. A permanent injunction enjoining Defendants from intercepting and/or viewing Shefts' personal and work email without the consent of Shefts;

B. An award of damages constituting the actual loss to Shefts caused by the improper interception of electronic communications by Defendants, currently estimated to be in excess of $50,000;

C. An award of punitive damages due to the willful and wanton misconduct of Defendants;

D. Attorney's fees;

E. Any other and further relief deemed appropriate under the circumstances.

## COUNT III
### Violation of the Stored Communications Act (SCA)
### (18 U.S.C. §2701)

85. Shefts restates and realleges paragraphs 1-68 of the Background as and for this paragraph 85 of Count III of the Complaint.

86. Defendants knowingly and intentionally directed and were aware of the installation of software on Shefts' computer for the purpose of accessing and obtaining electronic communications between Shefts and third parties which were stored on the server at Access2Go.

87. On information and belief, Defendants accessed and obtained numerous additional electronic communications between Shefts and third parties from Shefts' Yahoo email account, without authorization or consent from any party to the communication.

88. Defendants accessed and obtained, and viewed and read, numerous electronic communications between Shefts and third parties from Shefts' personally-owned blackberry device, and which resided on the Access2Go server. Access2Go had no ownership of the Blackberry device, and did not pay any service charges or fees with respect to that device, all such fees having been paid by Shefts.

89. Defendants accessed and obtained, and viewed and read, numerous electronic communications between Shefts and third parties from Shefts' computer located at Access2Go, and from Access2Go's server.

90. Defendants did not have the consent or authorization of Shefts or any other party to such electronic communications, to access and obtain the aforementioned electronic communications.

91. The electronic communications which Defendants accessed and obtained were used by Petrakis and Morgan to gain an advantage, or attempt to gain an advantage, in the underlying Lawsuit, and in settlement efforts relating to the underlying Lawsuit.

92. As a result of Defendants' actions, Shefts has been damaged.

WHEREFORE, Shefts respectfully requests that this honorable Court enter a judgment in favor of Shefts as follows:

A. A permanent injunction enjoining Defendants from viewing Shefts' personal and work email without the consent of Shefts;

B. An award of damages constituting the actual loss to Shefts caused by the illegal interception of electronic communications by Defendants, currently estimated to be in excess of $50,000;

C. An award of punitive damages due to the willful and wanton misconduct of Defendants;

D. Attorney's fees;

E. Any other and further relief deemed appropriate under the circumstances.

## COUNT IV
### Violation of the Computer Fraud and Abuse Act (CFAA)
### (18 U.S.C. §30)

93. Shefts restates and realleges paragraphs 1-68 of the Background as and for this paragraph 93 of Count IV of the Complaint.

94. Defendants knowingly and intentionally directed and were aware of the installation of software on Shefts' computer for the purpose of accessing and obtaining electronic communications between Shefts and third parties.

95. Petrakis accessed and obtained electronic communications contained in Exhibit A, between Shefts and his attorney, from Shefts' Yahoo email account.

96. On information and belief, Defendants accessed and obtained numerous additional electronic communications between Shefts and third parties from Shefts' Yahoo email account, without authorization or consent from any party to the communication.

97. Defendants accessed and obtained numerous electronic communications between Shefts and third parties from Shefts' personally-owned blackberry device. Access2Go had no ownership of the blackberry device and did not pay any service charges or fees with respect to that device.

98. Defendants accessed and obtained numerous electronic communications between Shefts and third parties from Shefts' computer located at Access2Go.

99. Defendants did not have the consent or authorization of Shefts or any other party to such electronic communications, to intercept, access, or view the aforementioned electronic communications, or to access Shefts' Yahoo, Access2Go, and/or Blackberry accounts.

100. Defendants accessed Shefts' computer and e-mail accounts without authorization.

101. Defendants accessed and obtained the aforementioned electronic communications with the intent to defraud Shefts.

102. As a result of Defendants' actions, Shefts has been damaged.

WHEREFORE, Shefts respectfully requests that this honorable Court enter a judgment in favor of Shefts as follows:

    A.    A permanent injunction enjoining Defendants from viewing Shefts' personal and work email without the consent of Shefts;

B. An award of damages constituting the actual loss to Shefts caused by the illegal interception and viewing of electronic communications by Defendants, and improper access to his accounts, currently estimated to be in excess of $50,000;

C. An award of punitive damages due to the willful and wanton misconduct of Defendants;

D. Attorney's fees;

E. Any other and further relief deemed appropriate under the circumstances.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES WHICH MAY BE PROPERLY SUBMITTED TO A JURY.

Respectfully submitted,

By: /s/ Robert M. Riffle
Robert M. Riffle
ELIAS, MEGINNES, RIFFLE & SEGHETTI, P.C.
416 Main St., Suite 1400
Peoria, IL 61602
(309) 637-6000
*Counsel for Plaintiff*

610-374.1

## VERIFICATION

Under penalties as provided by law pursuant to the Federal Rules of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and those matters beyond my direct knowledge for which affidavits of John Tandeski and James Feehan have been provided, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Jamison J. Shefts

SUBSCRIBED and SWORN to
before me this 6th day of
May, 2010.

_____
NOTARY PUBLIC
410-0432

OFFICIAL SEAL
JANET M. ARVIDSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-31-2013