IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JAMISON J. SHEFTS, an Individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 CV 1104 |
| **v.** | ) | |
| | ) | |
| JOHN PETRAKIS, an Individual, | ) | |
| KEVIN MORGAN, an Individual | ) | |
| and HEIDI HUFFMAN, an Individual, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF MOTION FOR SUMMARYJUDGMENT**
**AS TO COUNTS I, II AND III OF THE FIRST AMENDED VERIFIED COMPLAINT**

NOW COMES the Plaintiff, JAMISON J. SHEFTS ("Shefts"), by and through his attorneys, Elias, Meginnes, Riffle & Seghetti, P.C., and as and for his Reply in Support of his Motion for Summary Judgment as to Counts I, II and III against the Defendants JOHN PETRAKIS ("Petrakis") and HEIDI HUFFMAN ("Huffman"), states as follows:

## I.     INTRODUCTION

Defendants "bugged" Shefts' phone, and intercepted all of his incoming and outgoing text messages.  They installed and used Spector spyware to intercept all of Sheft's e-mails.  They created a separate "dummy account" to view all of these communications.   These communications included sensitive communications between Shefts and his divorce attorney, Shefts and his attorney in the dispute between the parties to this case, and Shefts and his personal friends.  This improper interception and access took place over a period in excess of two years. All of this was done without the knowledge and authority of Shefts, and without the authority of the parties with whom Shefts was communicating.  These improper actions were egregious.

Defendants have admitted all of the facts necessary for the grant of summary judgment in this case.  Defendants admit that they used Spector spyware to obtain and view Shefts' communications, and admit that they obtained Shefts' incoming and outgoing text messages sent to and from his Blackberry device.

A policy was adopted to govern the <u>rights and obligations</u> of Access2Go, Inc. and its employees with respect to electronic communications.  That policy, which was set forth in Section 6.7 of Access2Go, Inc.'s Employee Manual, provides, in pertinent part, as follows:

> No employee may access another employee's computer, computer files, or electronic mail messages **without prior authorization from the Board of Directors.**

In response to paragraph 23 of Shefts Statement of Undisputed Facts, Defendants make the following nonsensical statement:

> <u>Paragraph 23.</u>  Section 6.7 of the Employee Manual ratified by the Access2Go Board of Directors on July 2, 2008, did not limit the authority of the Board members to monitor the emails and text messages of Access2Go employees, officers and directors [see paragraphs 9, 10 & 17 of the Petrakis Affidavit, Exhibit A; also see paragraphs 5 through 10 of Part II (E)].

Caught red-handed in violation of the applicable statutes and the policy set forth in the Employee Manual, Defendants make the absurd claim that Shefts was not an employee of Access2Go, Inc. who was protected by the express language of the policy set forth in the Employee Manual.  Defendants further argue that Petrakis was the "liaison of security", and that this fabricated title allowed him to ignore the express language of the Employee Manual. Defendants' entire defense rests on their meritless claim that the Employee Manual does not provide Shefts protection from unauthorized interception and access of his electronic communications.  Defendants further argue that Board Members are exempt from the prohibition

2

clearly set forth in Section 6.7 of the Access2Go, Inc. Employee Manual.  Defendants'  reliance on the Employee Manual as a shield is nonsensical.  The mandate that no employee can access another employee's electronic mail messages without prior authorization from the Board of Directors could not be clearer.  Petrakis and Huffman are employees of Access2Go, Inc., and are bound by the prohibition in the Employee Manual that they cannot access Shefts' electronic mail messages without prior authorization from the Board of Directors.  The claim that Petrakis and Huffman intercepted and viewed Shefts e-mails and text messages out of concern regarding sexual harassment is first irrelevant, but also specious.  Shefts is in possession of numerous examples of sexually explicit communications sent by Petrakis and Huffman (Exhibit A, ¶27).  These communications show that the irrelevant excuse for violating Shefts' statutory rights is a mere pretext.

Once these frivolous defenses are dispelled, the entire response falls like a house of cards. Based on the undisputed facts in this case, Shefts is clearly entitled to summary judgment.

Based on the admissions of Petrakis and Huffman contained in their Response Memorandum, it is clear that, at the very least, Petrakis and Huffman violated the Stored Communications Act by obtaining the emails and text messages sent and received by Shefts using his Yahoo Email Account, Access2Go Email Account and Blackberry handheld device. Additionally, because the undisputed material facts establish that Petrakis's and Huffman's use of the BES software to intercept Shefts' SMS text messages sent and received using his Blackberry handheld device constituted "interceptions" pursuant to the ECPA, summary judgment should be granted as to Count I of the First Amended Verified Complaint for violation of the ECPA.

3

Petrakis and Huffman have attempted to confuse the Court by providing a confusing series of allegations that are immaterial to the causes of action that are the subject of this motion for summary judgment.  However, despite these efforts at confusion, they have admitted all facts material to establishing a violation of the ECPA, Stored Communications Act and Illinois Eavesdropping Statute.  Petrakis and Huffman admit that, prior to and after the Employee Manual was ratified by the Access2Go Board of Directors, they regularly accessed and obtained emails from Shefts' Access2Go Email Account and Yahoo Email Account and emails and text messages from his Blackberry handheld device.  They admit that they retrieved such emails using a number of methods, including creation of a "dummy account," the exchange server, the installation of SpectorPro spyware and the Blackberry Enterprise Software ("BES").  They admit that they accessed the electronic communications intentionally.  Those undisputed material facts are all that are needed for this Court to enter summary judgment against Petrakis as to Counts I, II and III and against Huffman as to Counts I and II.

Petrakis and Huffman also have attempted to confuse matters by referring to additional facts that they consider "relevant" and "material" to the Court's determination of whether summary judgment is appropriate.  The Court should not be misled by Petrakis's and Huffman's attempt to cloud the issues in this case.  The "facts" that they raise in the Response are unnecessary, irrelevant and only intended to confuse the Court.  The case law to which they cite is both improperly applied and irrelevant to the issue at hand.  Therefore, the Court should grant the Motion for Summary Judgment against Petrakis as to Counts I, II and III and against Huffman as to Counts I and II.

## II.    RESPONSE TO ADDITIONAL IMMATERIAL FACTS

**Undisputed Immaterial Facts**

Paragraph 7.  Shefts admits that the language contained on page 22 of the Employee Manual is properly quoted by Petrakis and Huffman in paragraph 7 of their Response but denies that it reiterates a preexisting Access2Go policy.  No action of the Board of Directors of Access2Go, or action of Shefts, was taken regarding the rights of a board member to monitor electronic mail messages and their content prior to the adoption of the Employee Manual.   (Affidavit of Jamison J. Shefts, attached hereto and hereinafter referred to as Exhibit A, ¶¶3-4).

Paragraph 8.  Shefts admits that the Employee Manual provided that an Access2Go employee could not monitor another employee's computer, computer files, or electronic mail messages without prior authorization from the Access2Go Board of Directors.  (Exhibit A, ¶7).

Paragraph 10.  Shefts admits that on June 18, 2008, the Board of Directors of Access2Go appointed Petrakis as liaison for security and employee issues per the Employee Manual.  Shefts denies that the Access2Go Board of Directors had any authority to monitor the emails and text messages of Access2Go employees, officers and directors beyond the authority defined in the Employee Manual.  Shefts also denies that Petrakis had an affirmative duty to monitor emails and text messages sent to and received by anyone through Access2Go's information systems. The purpose of the appointment of Petrakis as liaison was so that if an employee had an issue with an owner, the employee could go directly to the liaison. (Exhibit A, ¶12).

Paragraph 12.  Shefts admits that Petrakis and Huffman monitored Shefts' emails and text messages after the issuance of the Employee Manual but denies any inference that Petrakis and Huffman were not monitoring his email and text messages prior to the issuance of the Employee Manual. In fact, numerous examples of monitoring of Shefts' electronic communications existed

prior to the issuance of the Employee Manual, including an email communication between Shefts and Tandeski that was obtained by Petrakis, Morgan and Huffman on June 30, 2010.  (Exhibit A, ¶14).

Paragraph 14.  Shefts admits that on July 16, 2008, Petrakis, Morgan and Tandeski placed Shefts on notice that they were claiming he was violating his fiduciary duties to Access2Go by, among other things, disclosing confidential information to unauthorized individuals.  Shefts denies that he violated any of his fiduciary duties.  (Exhibit A, ¶20).

Paragraph 15.  Shefts admits that at the July 16, 2008 meeting, Petrakis, Morgan and Tandeski voted to explore legal remedies for Shefts' alleged violation of his fiduciary duties to Access2Go.  (Exhibit A, ¶20).

Paragraph 17.  Shefts admits that, on September 9, 2008, Petrakis, Morgan and Tandeski recommended that Shefts be terminated based on the alleged evidence they had supporting their recommendation.  (Exhibit A, ¶22).

Paragraph 18.  Shefts admits that, on September 16, 2008, a meeting of the Access2Go shareholders was held and that no action was taken regarding Shefts' suspension as President and CEO of Access2Go.  (Exhibit A, ¶22).

Paragraph 19.  Shefts admits that on September 16, 2008 a meeting of the Access2Go shareholders took place and that the shareholders did not vote to terminate Shefts.   (Exhibit A, ¶22).

Paragraph 21.  Shefts admits that he was involved with the purchase and installation of the BES server to support his Blackberry handheld device but denies any inference that he agreed to allow monitoring of his emails and text messages sent and received from his Blackberry handheld device.  (Exhibit A, ¶15).

<u>Paragraph 22.</u>  Shefts admits that Huffman had "administrative" rights for the BES server. Exhibit A, ¶16).

<u>Paragraph 24.</u>  Shefts admits that he contacted Huffman so that he could have his Blackberry connected to the server so that he could access his Access2Go Email Account on his Blackberry handheld device.  Shefts denies that he ever authorized any monitoring, interception or accessing of his emails through use of the BES software.  (Exhibit A, ¶17).

<u>Paragraph 25.</u>  Shefts admits that he contacted Huffman on certain occasions in order to have his Blackberry reconnected to the server.   (Exhibit A, ¶¶17-18).

<u>Paragraph 26.</u>  Shefts admits that he knew that email communications from his Access2Go Email Account were stored on the Access2Go server but denies that he knew that his SMS text messages sent and received using his Blackberry handheld device could be logged and stored on the Access2Go server by use of the BES software.  (Exhibit A, ¶18).

<u>Paragraph 27.</u>  Shefts admits that he has requested that Access2Go provide him with certain emails and text messages which Petrakis and Morgan rely on as the basis for their claim that he violated his fiduciary duties to Access2Go and denies that he has been terminated as President and CEO of Access2Go (Exhibit A, ¶24).

**Disputed Immaterial Facts**

<u>Paragraph 1.</u>  Shefts denies that Access2Go owns the rights to all data and files in any computer, network, or other information system used in the company.  (Exhibit A, ¶2).

<u>Paragraph 2.</u>  Shefts cannot speak to the state of mind of Petrakis, Morgan and Tandeski but Shefts denies that he ever sexually harassed any Access2Go employees and denies that he violated any fiduciary duties he owed to Access2Go. (Exhibit A, ¶25).

<u>Paragraph 3.</u>  Shefts denies that Petrakis had an affirmative responsibility to monitor the emails and text messages of Access2Go employees, officers and directors in order to safeguard Access2Go's resources.  (Exhibit A, ¶12).

<u>Paragraph 4</u>.  Petrakis did not consult with Tandeski regarding purchase of Spector Pro software.  (Affidavit of John Tandeski, attached hereto and hereinafter referred to as (Exhibit B, ¶2).

<u>Paragraph 5.</u>  Shefts denies that the Employee Manual was issued prior to June 30, 2008 and denies that the Access2Go Board ever had the authority to monitor the emails and text messages of the Access2Go employees, officers and directors prior to July 2, 2008.  (Exhibit A, ¶6).

<u>Paragraph 6.</u>  Shefts denies that Access2Go has ever had any policy where electronic mail messages, their content or any use of the Internet or computer equipment would be considered anything other than private.  (Exhibit A, ¶10).

<u>Paragraph 9.</u>  Shefts denies the interpretation of the Employee Manual contained within paragraph 9 of the Response and asserts that the language contained within the Employee Manual clearly requires the Access2Go Board of Directors to approve any and all monitoring of an Access2Go employee's computer, computer files, or electronic mail messages, including Shefts.  (Exhibit A, ¶7).

<u>Paragraph 11.</u>  Shefts denies that he stated that, with the issuance of the Employee Manual, he knew that Petrakis could monitor his emails and text messages.  (Exhibit A, ¶11).

<u>Paragraph 13.</u>  Shefts cannot admit or deny what Petrakis believed was his responsibility, but Shefts denies that the Board of Directors of Access2Go ever expressly informed Petrakis that he had a responsibility to monitor Shefts' emails and text messages.  (Exhibit A, ¶13).

Paragraph 16.  Shefts denies that Petrakis had evidence that Shefts violated fiduciary duties to Access2Go and that such evidence led to Shefts' suspension, with pay, on August 26, 2008. (Exhibit A, ¶20).

Paragraph 20.  Shefts denies that on December 22, 2009, the recommendation that Shefts be terminated was adopted by the Access2Go shareholders and denies that he was formally terminated as Access2Go's President and CEO.  (Exhibit A,¶24).

Paragraph 23.  Shefts lacks the personal knowledge to either admit or deny the allegations contained in paragraph 23.

### III.    ARGUMENT

**A.   Summary judgment should be entered against Petrakis and Huffman as to Count I of the First Amended Verified Complaint because the undisputed material facts establish that an "interception" as defined in the ECPA, occurred when Petrakis and Huffman used the BES software to read and review Shefts' SMS text messages sent and received using his Blackberry handheld device.**

Summary judgment should be entered against Petrakis and Huffman as to Count I of the First Amended Verified Complaint because the undisputed material facts establish that an "interception," as defined in the ECPA, occurred when Petrakis and Huffman used the BES software to acquire Shefts' SMS text messages sent and received using his Blackberry handheld device.  Petrakis and Huffman have admitted all facts necessary for Shefts to establish that a violation of the ECPA occurred.  The only determination that must be made by the Court in order to enter summary judgment in favor of Shefts and against Petrakis and Huffman as to Count I of the First Amended Verified Complaint is whether or not the use of the BES software by Petrakis and Huffman in order to acquire Shefts' SMS text messages constitutes an "intercept" as defined in the ECPA.  Because the undisputed material facts clearly establish that the use of the BES software by Petrakis and Huffman in this manner constitutes an "intercept" as defined in the

ECPA, summary judgment in favor of Shefts and against Petrakis and Huffman as to Count I of the First Amended Verified Complaint should be granted.

> 1. <u>Petrakis and Huffman have admitted all facts necessary for Shefts to establish that use of the BES software to acquire the SMS text messages sent and received by Shefts using his personally-owned Blackberry handheld device is a violation of the ECPA.</u>

While Petrakis and Huffman have attempted to create a dispute of material fact in order to prevent summary judgment against them as to Count I of the First Amended Verified Complaint, they have admitted all material facts necessary for Shefts to establish a violation of the ECPA. 18 U.S.C. §2511 states, in part, as follows:

> (1) Except as otherwise specifically provided in this chapter any person who--
>
> (a) intentionally intercepts, endeavors to intercept, or **procures any other person to intercept** or endeavor to intercept, any wire, oral, or electronic communication;
>
> \*       \*       \*
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. §2511(1) (West 2010) (emphasis added).

The following material facts are undisputed by Petrakis and Huffman:  (1) Shefts owned a Blackberry handheld device; (2) the BES software was purchased by Access2Go so that employees, including Shefts, could send and receive electronic mail messages from their Access2Go email accounts on their Blackberry handheld devices; (3) Shefts authorized Huffman to use her "administrative" rights to the BES software to connect his Blackberry handheld device to the Access2Go server through use of the BES software; (4) Petrakis and Huffman, with the assistance of Shawn Patton from Integrated Computer Resources, activated an application within the BES software that allowed them to intercept, acquire and log Shefts' SMS text messages

[which are entirely separate from electronic communications sent and received by Shefts using his Access2Go Email Account], including SMS text messages entirely unrelated to Access2Go and its business; (5) Petrakis and Huffman did not inform Shefts that the application on the BES software had been activated; (6) Shefts never authorized Petrakis and Huffman to activate the application on the BES software; (7)  Shefts was not aware that Petrakis and Huffman were intercepting his text messages;  (8) Petrakis and Huffman never received authorization from the Access2Go Board of Directors to monitor Shefts' SMS text messages sent and received using his Blackberry handheld device; (9) Access2Go did not pay for Shefts' Blackberry handheld device and/or the service associated with the use of that device at any time prior to the commencement of this case; and (10) Petrakis and Huffman read and reviewed the SMS text messages that were acquired using the BES software.

Petrakis and Huffman have not disputed Shefts' assertion in the Motion for Summary Judgment that the SMS text messages sent and received using his Blackberry handheld device constitute "electronic communications" as defined in the ECPA and that they acted intentionally when they used the BES software to acquire the SMS text messages that they read and reviewed. Based on the undisputed material facts in this case, the only determination that must be made by the Court is whether or not the actions taken by Petrakis and Morgan, described above, constitute an "intercept" pursuant to the ECPA.  As explained below, it is clear that their use of the BES software to acquire the SMS text messages constitutes an "intercept" and therefore, summary judgment should be granted in favor of Shefts and against Petrakis and Huffman as to Count I of the First Amended Verified Complaint.

   2. <u>The Court should grant summary judgment against Petrakis and Huffman as to Count I of the First Amended Verified Complaint because the use of the BES software by Petrakis and Huffman to acquire the SMS text messages sent and</u>

received by Shefts using his Blackberry handheld device constitutes an "intercept" as defined in the ECPA.

Based on the undisputed material facts stated above, it is clear that the use of the BES software by Petrakis and Huffman to acquire the SMS text messages sent and received by Shefts using his Blackberry handheld device constitutes an "intercept" as defined in the ECPA and, therefore, summary judgment should be granted in favor of Shefts and against Petrakis and Huffman as to Count I of the First Amended Verified Complaint.  18 U.S.C. §2510(4) states as follows:

> (4) "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

18 U.S.C. §2510(4) (West 2010).

In the Response, Petrakis and Huffman cite to Global Policy Partners, LLC et. al. vs. Yessin, 686 F.Supp.2d 631 (E.D. Va. 2009), for the following proposition:

> In American football, a ball can only be intercepted when it is "in flight."  Once a pass receiver on the offensive team has caught the ball, the window for interception has closed, and defenders can only hope to force a fumble.  In essentially the same way, a qualifying "intercept" under the [ECPA] can only occur when an [electronic] communication is accessed at some point between the time the communication is sent and the time it is received by the destination server, at which point it becomes a "stored communication" within the meaning of the [Stored Communication Act].

Id. at 638.

The Court in Global Policy Partners, LLC also stated as follows:

> [A] qualifying intercept occurs only where the acquisition of the communication occurs contemporaneously with its transmission by sender.  Thus interception includes accessing messages in transient storage on a server during the course of transmission, but does not include accessing the messages stored on a destination server.

12

> [The email must be] accessed at some point between the time the communication is sent and the time it is received by the destination server, at which point it becomes a "stored communication" within the meaning of the SCA.

Id.

Here, the undisputed material facts establish that the use of the BES software by Petrakis and Huffman in order to acquire the SMS text messages sent and received by Shefts using his Blackberry handheld device constitutes an "interception" as defined in the ECPA.  These communications were first intercepted.  The fact that they were also later "accessed" does not detract from the fact that an initial interception occurred.  First, it is necessary to clarify to the Court that James Feehan, the computer forensic expert retained by Shefts, does not dispute the description provided by Jason Gossett, the computer forensic expert retained by Petrakis and Huffman, as to how the BES software works.  Of course, any conclusions drawn by the experts as to whether the BES software allowed for the acquisition of the SMS text messages through an "intercept" as defined in the ECPA is irrelevant.  The Court must look at the manner in which the BES software functions (which is undisputed) in order to make an independent legal determination as to whether or not it allowed for acquisition of the SMS text message by an "intercept."  As plainly stated in the Second Supplemental Affidavit of James Feehan, the undisputed material facts clearly establish that the BES software did allow for the acquisition of the SMS text messages sent and received by Shefts using his Blackberry handheld device through an "intercept" as defined in the ECPA.

Prior to the activation of the application in the BES software that allowed for the logging of Shefts' SMS text messages by Petrakis and Huffman, with the assistance of Shawn Patton from Integrated Computer Resources, each time Shefts sent an SMS text message from his

13

Blackberry handheld device, the message was sent through the Verizon Wireless network and routed to its intended recipient.  The SMS text message was not logged in the Access2Go server. After activation of the relevant application in the BES software by Petrakis and Huffman, each time Shefts sent an SMS text message from his Blackberry handheld device, the SMS text message was sent through the Verizon Wireless network to its intended recipient **and** a duplicate SMS text message was created in Shefts' Blackberry handheld device, sent through the Verizon Wireless network and routed directly to the BES server at Access2Go where the SMS database was updated to include the new SMS message. The SMS text message and the duplicate that was created by the BES software were **sent** from Shefts' Blackberry handheld device **simultaneously**.  Attached to the Second Supplemental Affidavit of James Feehan as Exhibit A is a diagram of the manner in which the relevant application on the BES software allowed Petrakis and Huffman to acquire the Shefts' SMS text messages sent by Shefts using his Blackberry handheld device.

When a SMS text message was received by Shefts on his Blackberry handheld device, the relevant application on the BES software operated in much the same way as it did when Shefts sent a SMS text message from his Blackberry handheld device to an intended recipient. With the relevant application of the BES software activated, each time Shefts received a SMS text message on his Blackberry handheld device from a third party, the SMS text message was sent from the third party through the Verizon Wireless network and routed to Shefts' Blackberry handheld device.   After the message was received by Shefts' Blackberry handheld device, the BES software caused Shefts' Blackberry handheld device to send the SMS text message back through the Verizon Wireless network to the Access2Go server on which the BES software was installed. There the message was updated to the BES SMS database. Attached to the Second

14

Supplemental Affidavit of James Feehan as Exhibit B is a diagram of the manner in which the relevant application on the BES software allows Petrakis and Huffman to acquire the Shefts' SMS text messages received by Shefts using his Blackberry handheld device.

Based on the undisputed material facts, it is clear that each time the BES software was used by Petrakis and Huffman to acquire Shefts' SMS text messages sent and received using his Blackberry handheld device, an "intercept" as defined in the ECPA, occurred.  As Petrakis and Huffman have admitted to and relied upon in the Response, "a qualifying "intercept" under the [ECPA] can only occur when an [electronic] communication is accessed at some point between the time the communication is sent and the time it is received by the destination server, at which point it becomes a "stored communication" within the meaning of the [Stored Communication Act]."  Global Policy Partners at 638.  Here, as explained in the Second Supplemental Affidavit of James Feehan, the relevant application in the BES software caused the SMS text message that Shefts intended only be sent to the third party intended recipient to be sent to the Access2Go server on which the BES software was located simultaneously therewith.

To apply the football analogy applied by the Court in Global Policy Partners and relied upon by Petrakis and Huffman in the Response, it was as if a defensive player intercepted the ball from the quarterback by taking it directly out of the quarterback's hand.  The mere fact that the intended recipient also received the SMS text message from Shefts is irrelevant to the determination of whether or not an "intercept" occurred.  It is akin to saying that the use of a wiretap on a phone line could not be an "intercept" because the parties to the conversation could hear each other's oral communications.  Clearly, such a finding would be inconsistent with the intent of the ECPA.  A similar rationale applies to the "intercept" of SMS text messages by Petrakis and Huffman by use of the BES software.  Therefore, based on the application of the

ECPA to the undisputed material facts, it is clear that Petrakis and Huffman used the relevant application in the BES software to "intercept" the SMS text messages sent and received by Shefts using his Blackberry handheld device, and summary judgment should be entered in favor of Shefts and against Petrakis and Huffman as to Count I of the First Amended Verified Complaint. [1]

**B.**     **Summary judgment should be entered against Petrakis as to Count III of the First Amended Verified Complaint because the undisputed material facts establish that Petrakis's monitoring of Shefts' Yahoo Email Account and Access2Go Email Account constitute violations of the Stored Communications Act.**

Despite the arguments raised by Petrakis in his Response to the Motion for Summary Judgment, summary judgment is appropriate against Petrakis as to Count III of the First Amended Verified Complaint because he used the SpectorPro software and the "dummy account" to obtain electronic communications sent and received by Shefts using his Access2Go Email Account and his Yahoo Email Account.[2]  18 U.S.C. §2701(a) states as follows:

> (a) Offense.--Except as provided in subsection (c) of this section whoever--
>
> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
>
> (2) intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in

---

[1] Assuming, *arguendo*, that the Court is unable to determine whether or not the use of the relevant application in the BES software by Petrakis and Huffman to acquire the SMS text messages sent and received by Shefts using his Blackberry handheld device is akin to an "intercept" as defined in the ECPA, it is clear from the undisputed material facts that, at the very least, the manner in which Petrakis and Huffman acquired the SMS text messages constitutes a violation of the Stored Communications Act.  As a result, if the Court does not find that an "intercept" occurred, the rationale asserted by Shefts in Section B of the Argument, herein, applies and summary judgment should be entered against Petrakis and Huffman for violation of the Stored Communications Act as a result of their use of the application in the BES software to obtain Shefts' SMS text messages.

[2] See Footnote 1, above, as to why the use of the BES software by Petrakis and Huffman to obtain Shefts' SMS text messages sent and received from his Blackberry handheld device should be considered  a violation of the Stored Communications Act if the Court does not believe that the use of the BES software constituted an "intercept" as defined in the ECPA.

such system shall be punished as provided in subsection (b) of this
section.

18 U.S.C. §2701(a) (West 2010).

The undisputed material facts in this case establish that Petrakis, without authorization from Shefts, or the Access2Go Board of Directors, used a "dummy account" that he intentionally caused to be setup on his Access2Go computer to obtain electronic communications sent and received by Shefts using his Access2Go Email Account from the Access2Go server.   The undisputed material facts in this case establish that Petrakis, without authorization from Shefts, or the Access2Go Board of Directors, used the SpectorPro software to access Shefts' Access2Go computer in order to obtain electronic communications sent and received by Shefts using his Yahoo Email Account.  The defenses to Petrakis's admitted use of the "dummy account" and SpectorPro software to obtain the electronic communications sent and received by Shefts using his Access2Go Email Account and Yahoo Email Account raised in the Response do not hold any weight for purposes of determining whether summary judgment should be granted in favor of Shefts and against Petrakis as to Count III of the First Amended Verified Complaint because the plain language of the Employee Manual, which was ratified by the Access2Go Board of Directors on July 2, 2008, and effective at all times during which Petrakis alleges that he was liaison for security and employee issues related to the Employee Manual, requires that the monitoring of any Access2Go employee, including Shefts, must be approved by the Access2Go Board of Directors on a case-by-case basis and it is undisputed that the Access2Go Board of Directors never approved any monitoring of Shefts' Access2Go computer and electronic communications sent and received using his Access2Go Email Account and Yahoo Email Account.  Therefore summary judgment should be granted in favor of Shefts and against Petrakis as to Count III of the First Amended Verified Complaint.

1.  <u>Petrakis has admitted all facts necessary for Shefts to establish that use of the "dummy account" and SpectorPro software to obtain the electronic communications sent and received by Shefts using his Access2Go Email Account and Yahoo Email Account is a violation of the Stored Communications Act.</u>

The following material facts are undisputed by Petrakis:  (1) Shefts sent and received electronic communications using his Access2Go Email Account; (2) Shefts sent and received electronic communications using his Yahoo Email Account; (3) Petrakis authorized the setup of a "dummy account" on his computer, pursuant to which he obtained electronic communications sent and received by Shefts using his Access2Go Email account; (4) the setup of a "dummy account" for purposes of monitoring Shefts' Access2Go Email Account was never authorized by the Access2Go Board of Directors; (5) Petrakis authorized the installation of SpectorPro software on Shefts' Access2Go computer; (6) Shefts was never informed by Petrakis that SpectorPro software was installed on Shefts' Access2Go computer; (7) the installation of the SpectorPro software on Shefts' computer was never authorized by the Access2Go Board of Directors; (8) Petrakis was appointed liaison for security and employee issues related to the Employee Manual at a June 18, 2008 meeting of the Access2Go Board of Directors; (9) the Employee Manual was ratified by the Access2Go Board of Directors on July 2, 2008; (10) Petrakis used the SpectorPro software to obtain the Yahoo Email from Shefts' Access2Go computer; (11) Section 6.7 of the Employee Manual states, in part, that "[n]o employee may access another employee's computer, computer files, or electronic mail messages without prior authorization from the Board of Directors.;"  (12) Shefts was an employee of Access2Go at the time the Employee Manual was ratified by the Access2Go Board of Directors and at all times prior thereto; (13) Shefts was President and CEO of Access2Go at the time the Employee Manual was ratified by the Access2Go Board of Directors, as expressly stated in the Jamison J. Shefts Employment Agreement; (14) Shefts is, and was at all times relevant hereto, the Chairman

of the Access2Go Board of Directors; and (15) the Access2Go Board of Directors has never voted, or been asked to vote, to authorize the monitoring of Shefts' Access2Go computer or the electronic communications sent and received by Shefts using his Access2Go Email Account, Yahoo Email, or any other method of communication.

Petrakis has not disputed Shefts' assertion in the Motion for Summary Judgment that the electronic communications sent and received by Shefts using his Access2Go Email Account and Yahoo Email Account constitute "electronic communications" as defined in the Stored Communications Act.  Petrakis has not denied that he acted intentionally when he used the "dummy account" to obtain the electronic communications sent and received by Shefts using his Access2Go Email Account and the SpectorPro software to obtain the electronic communications sent and received by Shefts using his Yahoo Email Account.  Petrakis has not disputed that these electronic communications were stored on the Access2Go server.    Based on the undisputed material facts in this case, the only determination that must be made by the Court is whether Petrakis obtained the electronic communications described above "without authorization" or "exceeded an authorization" to obtain the electronic communications, as required in order to obtain relief under the Stored Communications Act.   As explained below, it is clear that Petrakis did not have authorization to use the "dummy account" and SpectorPro software to obtain the electronic communications sent and received by Shefts using his Yahoo Email Account and Access2Go Email Account, and therefore summary judgment should be granted in favor of Shefts and against Petrakis as to Count III of the First Amended Verified Complaint.

      2.  <u>The manner in which Petrakis used the SpectorPro software to obtain the Yahoo Email is irrelevant to whether or not summary judgment should be granted in favor of Shefts and against Petrakis as to Count III of the First Amended Verified Complaint.</u>

Whether or not Petrakis used the "keylogger" application in the SpectorPro software or the "screenshot" application in the SpectorPro software is irrelevant to a determination for purposes of a motion for summary judgment of whether a violation of the Stored Communications Act occurred.   In his Motion for Summary Judgment, Shefts argues that Petrakis used the "keylogger" application in the SpectorPro software to obtain the Yahoo Email. Petrakis disputes Shefts' contention and alleges that he used the "screenshot" application in the SpectorPro software to obtain the Yahoo Email.  The distinction is irrelevant for purposes of determining whether summary judgment is appropriate as to Count III of the First Amended Verified Complaint because, in each case, the use of SpectorPro software to monitor Shefts' electronic communications is a violation of the Stored Communications Act unless he was authorized by the Access2Go Board of Directors to monitor Shefts' Access2Go computer or electronic communications.  As explained below, the undisputed material facts establish that Petrakis was not authorized by Access2Go to monitor Shefts' electronic communications and therefore, summary judgment does not hinge on the distinction of which application in the SpectorPro software was used to obtain the electronic communications from Shefts' Yahoo Email Account.

3. Petrakis's appointment as "Board liaison for security and employee issues per the new employee manual" at the June 18, 2008 Board meeting compelled Petrakis to enforce the plain language of the Employee Manual as of the date of its ratification, at the July 2, 2008 Board meeting.

Summary judgment should be granted as to Count III of the First Amended Verified Complaint, despite Petrakis's contention that, as of June 18, 2008, he was liaison for security and employee issues per the new employee manual and thus authorized to monitor Shefts' Access2Go Email Account and Yahoo Email Account, because once the Employee Manual was ratified by the Board, on July 2, 2008, he was required to enforce the Employee Manual, which

clearly requires that the Board approve monitoring of any employee's computer or electronic communications, including Shefts.

The only matter at issue regarding Count III of the First Amended Verified Complaint is whether Petrakis lacked authority from Access2Go, or exceeded his authority from Access2Go when he used the "dummy account" and SpectorPro software to monitor Shefts' electronic communications sent and received using his Yahoo Email Account and Acces2Go Email Account. The minutes from the June 18, 2008 meeting of the Access2Go Board of Directors, attached to the Response as Exhibit 3 to the Affidavit of John Petrakis, states, in part, as follows:

> **Motion to Submit John Petrakis as Board liaison for security and employee issues per the new employee manual.** Tandeski makes motion, second by Morgan. Tandeski, Morgan and Petrakis Approve. Shefts abstains.

The minutes from the July 2, 2008 meeting of the Access2Go Board of Directors, attached to the Response as Exhibit 4 to the Affidavit of John Petrakis, states, in part, as follows

> **Motion made to approve the Employee manual and Non-Compete/Non Disclosure Agreement**. This document will be presented to all employees and return signature of receipt and acceptance is expected. Motion made by Morgan, Second by Tandeski. Morgan, Tandeski, Petrakis—Yes. Shefts-Abstain.

Section 6.7 of the Employee Manual, which is attached to the Motion for Summary Judgment as Exhibit C, states, in part, as follows:

> No employee may access another employee's computer, computer files, or electronic mail messages **without prior authorization from the Board of Directors**. (emphasis added). (Exhibit C)

Based on the undisputed facts stated above, summary judgment should be granted as to Count III of the First Amended Verified Complaint in favor of Shefts and against Petrakis. In the Response, Petrakis's entire argument revolves around the idea that Access2Go was authorized, as an electronic communications service, to monitor its employees' computers and

electronic communications, including the Acces2Go computer and electronic communications of Shefts, and that Access2Go granted such authorization to Petrakis when it appointment him Board liaison of security and employees issues per the Employee Manual.  Even if it is accepted that Access2Go is an "electronic communications service" (which Shefts disputes), the plain language of the Employee Manual establishes that Petrakis violated the Stored Communications Act when he used the "dummy account" and SpectorPro software to obtain the electronic communications sent and received by Shefts using his Access2Go Email Account and Yahoo Email Account.

As the Board liaison for security and employee issues per the Employee Manual, it cannot be disputed that Petrakis had an obligation to actually abide by the plain language of the Employee Manual.  As stated above, "[n]o employee [of Access2Go] may access another employee's computer, computer files, or electronic mail messages **without prior authorization from the Board of Directors**."  (emphasis added).  Based on that language contained within the Employee Manual, Petrakis was required to obtain prior authorization from the Board of Directors in order to use the SpectorPro software and set up the "dummy account" for purposes of obtaining the electronic communications sent and received by Shefts using the Access2Go Email Account and Yahoo Email Account.  The undisputed material facts establish that the Access2Go Board of Directors never voted to authorize the monitoring of any employees' computer, computer files, or electronic mail messages, including Shefts' computer, computer files or electronic mail messages.

The Employee Manual is, for all intents and purposes, a contract between Access2Go and its employees, including Shefts.  After the Employee Manual was ratified by the Access2Go Board of Directors, a contractual right existed between Access2Go and its employees pursuant to which

Access2Go, and its officers, have an obligation to abide by the plain language of the Employee Manual. An Employee Manual such as the one implemented by Access2Go, Inc. creates contractual obligations on the part of the employer. As noted by the Seventh Circuit Court of Appeals in <u>Hunt v. Chicago Housing Authority</u>, 972 F.2d 351, 356 (7th Cir. 1992):

> *Duldulao v. St. Mary of Nazareth Hospital Center,* 505 N.E.2d 314 (Ill.1987), the Illinois Supreme Court held that "when traditional requirements for contract formation are present, 'an employee handbook or other policy statement creates enforceable contractual rights.'

The plain language of the Employee Manual requires that Petrakis, or any employee, receive authorization from the Access2Go Board of Directors prior to monitoring <u>any</u> employee's electronic communications, including Shefts' electronic communications. No authorization was given by Access2Go.

It is disingenuous for Petrakis to argue that the Employee Manual, including specifically Section 6.7 thereof, did not apply to Shefts on the supposed grounds that he was not an "employee" who was entitled to protection under the Employee Manual. There is no language in the Employee Manual to support this contention. Moreover, the application of Petrakis' argument would lead to absurd results. For instance, if Petrakis's construction of the Employee Manual was applied, approval of the Board of Directors would be necessary in order to monitor all employees other than Shefts, Morgan and Petrakis. When language of a contract is clear and unambiguous, courts should not alter that language to achieve a different result. (<u>Lyras v. Norfolk & Western Ry. Co.</u>, 163 F.3d 466 (7th Cir. 1999)). As the Court stated in <u>Gallagher v. Lenart,</u> 367 Ill.App.3d 293, 854 N.E.2d 800, 305 Ill.Dec. 208 (1st Dist. 2006):

> The primary objective when construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract. *K's Merchandise Mart, Inc.,* 359 Ill.App.3d at 1142, 296 Ill.Dec. 612, 835 N.E.2d at 970. A written

23

contract is presumed to include all material terms agreed upon by the parties. *K's Merchandise Mart, Inc.,* 359 Ill.App.3d at 1142, 296 Ill.Dec. 612, 835 N.E.2d at 971.

As the Court also stated in Gallagher:

Additionally, a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included. 12A Ill. L. & Prac. *Contracts* § 233 (1983).  (Emphasis added).

Contrary to these clear principles of contract law, Defendants are asking this court to ignore the plain language of the parties' contract, wherein they agreed that no employee could view another employees' electronic communications without prior Board approval.

Without direct authority from the Access2Go Board to monitor Shefts' computer and electronic communications, Petrakis has no defense to his admitted use of the "dummy account" and SpectorPro software to monitor the electronic communications sent and received by Shefts using his Access2Go Email Account and Yahoo Email Account.  Petrakis does not contend that he is an electronic communication service or that he had authority outside any alleged authority from Access2Go to monitor Shefts' electronic communications.  Based on the plain language of the Employee Handbook, including Section 6.7, it is clear that Petrakis, without authority to monitor Shefts' Access2Go computer and electronic communications, used the "dummy account" and SpectorPro software to obtain the electronic communications sent and received by Shefts using his Access2Go Email Account and Yahoo Email Account.  Therefore, summary judgment should be granted in favor of Shefts and against Petrakis as to Count III of the First Amended Verified Complaint.

C.     **Summary judgment should be entered against Petrakis and Huffman as to Count II of the First Amended Verified Complaint because the undisputed material facts establish that Petrakis and Huffman knowingly and intentionally used the BES**

**software, "dummy account" and SpectorPro spyware to obtain electronic communications between Shefts and third parties on his Yahoo Email Account, Access2Go Email Account and Blackberry handheld device.**

Summary judgment should be granted as to Count II of the First Amended Verified Complaint because Petrakis and Huffman knowingly and intentionally used the BES software, "dummy account" and SpectorPro spyware to obtain electronic communications sent and received by Shefts to third parties using his Yahoo Email Account, Access2Go Email Account and Blackberry handheld device.  Petrakis and Huffman have asserted three arguments in the Response in support of their contention that summary judgment should not be entered against them as to Count II of First Amended Verified Compliant:  (1) the Illinois Eavesdropping Statute is unconstitutional; and (2) the emails and text messages obtained by Petrakis and Huffman do not constitute "electronic communications" as defined by the Illinois Eavesdropping Statute because they were not private and were not recorded surreptitiously.  Based on the undisputed material facts, it is clear that Petrakis's and Huffman's arguments are without merit and summary judgment should be entered in favor of Shefts and against Petrakis and Huffman as to Count II of the First Amended Verified Complaint.

1.  The Illinois Eavesdropping Statute is constitutional.

Petrakis and Huffman have not provided any competent evidence or argument that supports their claim that the Illinois Eavesdropping Statute is unconstitutional.  A violation of the Illinois Eavesdropping Statute occurs when a person "knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication…." 720 ILCS 5/14-2(a)(1)(West 2010).  First, Petrakis and Huffman have failed to provide any legal authority

for their assertion that the Illinois Eavesdropping Statute prohibits an individual from making an audio recording of a government activity. It is important to note that this case does not even involve a claim related to a governmental activity. Statutes are presumed to be valid and it is the burden of the party challenging the statute's constitutionality to establish that the statute is unconstitutional.

> This statute, like all others, is presumed to be a valid enactment and the burden is on the party challenging it to establish its constitutional invalidity.

Polyvend, Inc. v. Puckorius, 77 Ill.2d 287, 303, 395 N.E.2d 1376, 1383, 32 Ill.Dec. 872, 879 (Ill. 1979).

It is important to note that this case does not even include a claim related to a governmental activity. Moreover, none of the cases that Defendants have cited to in support of their assertion that the Illinois Eavesdropping Statute is unconstitutional involve any discussion of the Illinois Eavesdropping Statute. Petrakis and Huffman have presented no evidence supporting their claim that the Illinois Eavesdropping Statute is unconstitutional. The Court cannot find that the Illinois Eavesdropping Statute is unconstitutional based solely on Petrakis's and Huffman's unsupported assertion that such is true.

Second, Petrakis and Huffman do not even attempt to argue that the applicable portion of the Illinois Eavesdropping Statute in this case is unconstitutional as applied to the facts in this case. "A party may not raise a constitutional challenge to a provision of a statute that does not affect him or her." In re Veronica C., 2010 WL 3704987, *7 (Ill. 2010). Obviously, this case involves the use of an eavesdropping device to obtain private "electronic communications." Petrakis and Huffman have not argued that an individual has a First Amendment right to use an eavesdropping device to obtain private "electronic communications." They cannot rely on

another portion of the Illinois Eavesdropping Statute's alleged unconstitutionality as the basis for avoiding summary judgment as to Count II.  Therefore, because there is no evidence supporting Petrakis's and Huffman's contention that the Illinois Eavesdropping Statute is unconstitutional, summary judgment should be granted against Petrakis and Huffman as to Count II of the First Amended Verified Complaint.

> 2.  Shefts' emails and SMS text messages sent and received using his Yahoo Email Account, Access2Go Email Account and Blackberry handheld device are "electronic communications" pursuant to the Illinois Eavesdropping Statute.

In their Response, Petrakis and Huffman also argue that summary judgment as to Count II of the First Amended Verified Complaint should be denied because the SMS text messages and electronic mail messages Shefts sent and received using his Yahoo Email Account, Access2Go Email Account and Blackberry handheld device are not "electronic communications," as defined in the Illinois Eavesdropping Statute.  720 ILCS 5/14-1(e) states as follows:

> For purposes of this Article, the term electronic communication means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, where the sending and receiving parties intend the electronic communication to be private and the interception, recording, or transcription of the electronic communication is accomplished by a device in a surreptitious manner contrary to the provisions of this Article. Electronic communication does not include any communication from a tracking device.

720 ILCS 5/14-1(e) (West 2010).

Specifically, Petrakis and Huffman argue that the electronic mail messages and SMS text messages are not "electronic communications" because Shefts did not intend the communications to be private and that the interception of the electronic communication was not accomplished by a device in a surreptitious manner.  Because the undisputed material facts

establish that the communications were intended to be private and that the interception of the communications was accomplish by a device in a surreptitious manner, summary judgment should entered in favor of Shefts and against Petrakis and Huffman as to Count II of the First Amended Verified Complaint.

a)    <u>Shefts' electronic communications were private.</u>

Shefts does not dispute that, under the Illinois Eavesdropping Statute, both parties to an email or text message communication must intend for the communication to be private in order for it to be an "electronic communication."   However, based on the undisputed material facts, it is clear that Shefts had an expectation of privacy regarding the electronic communications he sent and received using the Access2Go Email Account, Yahoo Email Account and Blackberry handheld device.   For purposes of this argument, Shefts refers the Court to the undisputed material facts that were addressed in Section A and B of this Argument.

Based on the undisputed material facts, it is clear that Shefts had an expectation of privacy regarding his electronic communications using his Access2Go Email Account, Yahoo Email Account and Blackberry handheld device both prior to and after ratification of the Employee Manual.   Shefts was President and C.E.O. of Access2Go at all times relevant hereto and was Chairman of the Board of Directors of Access2Go.   As President of Access2Go and Chairman of the Board of Directors of Access2Go, Shefts was privy to all authorized decisions made at Access2Go.   As a result, Shefts had a reasonable belief that, if monitoring of <u>any</u> employee's computer, computer files or electronic mail messages were going to be monitored, he would have knowledge of the monitoring.   The Access2Go Board of Directors never took a vote regarding the monitoring of any employee's computer, computer file or electronic mail messages prior to or after the ratification of the Employee Manual.   Additionally, Shefts, in his capacity as

28

President of Access2Go, never authorized monitoring of any Access2Go employees.  Perhaps the best evidence that Shefts' expected his communications to be private is found in the fact that he communicated with his counsel in both his divorce and his dispute with defendants, and that these communications were intercepted and accessed.  Based on these undisputed material facts, its is clear that Shefts had an expectation of privacy regarding his electronic communications prior to the ratification of the Employee Manual.

As stated in the Motion for Summary Judgment, the undisputed material facts establish that Shefts had a heightened expectation of privacy regarding the monitoring of his electronic communications after ratification of the Employee Manual on July 2, 2008, because the Employee Manual expressly required authorization of the Access2Go Board of Directors before an employee's computer, computer files and electronic mail messages could be monitored.  As Chairman of the Access2Go Board of Directors, Shefts knew that any monitoring of his electronic communications could only be done after the Board approved such actions.  Since he was a member of the Board, he would be aware of any authorization granted by the Board of Directors.  Clearly, as a result, he had a heightened expectation of privacy regarding his electronic communications.

In support of their claim that Shefts did not have an expectation of privacy, Petrakis and Huffman have relied heavily on Smyth v. Pillsbury Company, 914 F.Supp. 97 (E.D.Penn. 1996). In addition to the fact that Smyth is not binding precedent, Petrakis's and Huffman's analysis of Smyth  is misleading.  Smyth does not stand for the principle that employees do not have an expectation of privacy when they send e-mails over an employer's e-mail system.  In fact, the Court in Smyth expressed that an employee could have an expectation of privacy when they send e-mails over an employer's e-mail system:

> In the first instance, unlike urinalysis and personal property searches, we do not find a reasonable expectation of privacy in e-mail communications voluntarily made by an employee to his supervisor over the company e-mail system notwithstanding any assurances that such communications would not be intercepted by management.

Id. at 101.

Here, Shefts clearly had assurance that Access2Go would not monitor his electronic communications sent and received using his Access2Go Email Account, Yahoo Email Account and Blackberry handheld device because he was President of Access2Go and Chairman of the Access2Go Board of Directors.  Whether or not he knew that his electronic communications were being stored in the Access2Go server is irrelevant.  His knowledge as President and Chairman of the Board, that no employee could monitor his electronic communications without first securing board approval, created an expectation of privacy.   The undisputed material facts establish a heightened expectation of privacy, and Petrakis and Huffman have not asserted any material facts that create a dispute of material fact regarding Shefts' belief that his electronic communications were private.

> b)    Shefts' email and text messages were recorded surreptitiously.

Petrakis and Huffman also assert that Shefts' electronic communications sent and received using his Access2Go Email Account, Yahoo Email Account and Blackberry handheld device are not "electronic communications" because they were not recorded surreptitiously.  The undisputed material facts establish otherwise.  Under the Illinois Eavesdropping Statute, in order to have an "electronic communication," it is necessary that the "recording, or transcription of the electronic communication is accomplished by a device in a surreptitious manner."  Petrakis and Huffman have admitted to the use of the SpectorPro spyware, the "dummy account" and the BES software to obtain Shefts' electronic communications sent and received by Shefts using his

Access2Go Email Account, Yahoo Email Account and Blackberry handheld device.  It is undisputed that Shefts had no knowledge that any of those devices were being used to obtain his electronic communications.  It is also undisputed that Petrakis and Huffman never informed Shefts that they were using the "dummy account," SpectorPro software and BES software to monitor his electronic communications.  Clearly, the use of these methods to obtain the electronic communications is surreptitious.

If Petrakis's and Huffman's unsupported interpretation is accepted by the Court, it would be virtually impossible for the Illinois Eavesdropping Statute to apply to any employer. Obviously, this is not the intent of the Illinois Eavesdropping Statute.  Therefore, because the emails and text messages sent and received by Shefts using his Yahoo Email Account, Access2Go Email Account and Blackberry handheld device are "electronic communications" as defined by the Illinois Eavesdropping Statute, summary judgment should be granted as to Count II of the First Amended Verified Complaint.

## IV.    CONCLUSION

For all the foregoing reasons, Shefts respectfully requests that the Court enter summary judgment in his favor and against Defendant Heidi Huffman as to Counts I and II of the First Amended Verified Complaint and against Defendant John Petrakis as to Counts I, II and III of the First Amended Verified Complaint, and that the Court grant such other or additional relief as the Court deems just.

Respectfully submitted

By:    _/s/ Lane G. Alster_____
       Lane G. Alster
       ELIAS, MEGINNES, RIFFLE & SEGHETTI, P.C.
       416 Main St., Suite 1400
       Peoria, IL 61602

(309) 637-6000
*Counsel for Plaintiff*

410-0936.1

**CERTIFICATE OF COMPLIANCE PURSUANT TO**
**CENTRAL DISTRICT OF ILLINOIS LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(D) of the Rules of the United States District Court, Central District of Illinois, the undersigned hereby certifies that an analysis of Sections E and F of the foregoing Memorandum using the document information program of Microsoft Word yields the following results:

Words:          6,871
Characters:     44,501(with spaces)

The Memorandum is therefore in compliance with the volume type limitation of Local Rule 7.1(D).

Date:  September 29, 2010          /s/ Lane G. Alster
                                   Lane G. Alster, Esq.
                                   *Attorney for Plaintiff*
                                   Elias, Meginnes, Riffle & Seghetti, P.C.
                                   416 Main Street, Suite 1400
                                   Peoria, IL 61602
                                   Telephone:  (309) 637-6000
                                   Facsimile:  (309) 637-8514

## PROOF OF SERVICE

I hereby certify that on September 29, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| George Mueller | J. Reed Roesler |
| Mueller Anderson, P.C. | Davis & Campbell, L.L.C. |
| 609 Etna Road | 401 Main Street, Suite 1600 |
| Ottawa, IL 61350 | Peoria, Illinois 61602 |

I also hereby certify that on n/a, 2010, I served a copy of the foregoing document on the following at the respective business addresses below by deposit in the U. S. Mail, postage prepaid, at Peoria, Illinois:

None.

_____/s/ Lane G. Alster_____
Lane G. Alster, Esq.
*Attorney for Plaintiff*
Elias, Meginnes, Riffle & Seghetti, P.C.
416 Main Street, Suite 1400
Peoria, IL 61602
Telephone:  (309) 637-6000
Facsimile:  (309) 637-8514