IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAMISON J. SHEFTS, an Individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 10 CV 1104 |
| v. | ) |
| | ) |
| JOHN PETRAKIS, an Individual, | ) |
| KEVIN MORGAN, an Individual, | ) |
| and HEIDI HUFFMAN, an | ) |
| Individual, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO RECONSIDER SMS MESSAGE INTERCEPTION RULING**

Defendants JOHN PETRAKIS and HEIDI HUFFMAN, by their attorneys George Mueller and J. Reed Roesler, file this Memorandum of Law in support of their Motion to Reconsider the Court's ruling in its Order & Opinion dated December 9, 2010 [Doc. 84], regarding the "interception" of Shefts' SMS text messages.

**I.**

**A Motion to Reconsider Is Appropriate Where There Has Been a Clarification
of the Law or Where the Court Misunderstood a Party's Position.**

Strictly speaking, the Federal Rules of Civil Procedure do not provide for motions to reconsider. Berger v. Nazametz, No. 00-CV-0584-DRH, 2001 WL 936322, at *1 (S.D. Ill. June 26, 2001). However, such motions are generally allowed to be filed under either Rule 59(e) or Rule 60(b). Vaughn v. Johanns, No. 06-CV-4038 MJR, 2007 WL 1141946 (S.D. Ill. Apr. 17, 2007). If a motion to reconsider is filed within 28 days of entry of a challenged judgment or

1

order, the motion is construed as a motion to alter or amend under Rule 59(e).[1]  Berger, 2001 WL 936322, at *1.  If a motion to reconsider is filed more than 28 days after entry of a challenged judgment or order, Rule 60(b) applies.  *See, e.g.,* Talano v. Nw. Med. Faculty Found., Inc., 273 F.3d 757, 762 (7th Cir. 2001); Britton v. Swift Transp. Co., Inc., 127 F.3d 616, 618 (7th Cir. 1997).  *Accord* Borrero v. City of Chicago, 456 F.3d 698, 699 (7th Cir. 2006).  Although Rules 59(e) and 60(b) expressly apply to final judgments and orders, a motion to reconsider is appropriate to review interlocutory orders "if there is a compelling reason . . .."  Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 572 (7th Cir. 2006).  *See also* Agostini v. Felton, 521 U.S. 203, 236, 117 S.Ct. 1997 (1997); Brengettcy v. Horton, 423 F.3d 674, 680 (7th Cir. 2005).

Motions to reconsider are generally viewed with disfavor.  Marmi E. Graniti D'Italia Sicilmarmi S.p.A. v. Universal Granite & Marble, No. 09 C 5529, 2010 WL 4884026, at *1 (N.D. Ill. Nov. 24, 2010).  However, a court must have the power to reconsider a prior ruling where there is a compelling reason, such as a clarification of law that makes clear that the earlier ruling was erroneous (Solis v. Consulting Fiduciaries, Inc., 557 F.3d 772, 780 (7th Cir. 2009)), or where a party's position has been misunderstood (Otto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000)).

## II.

### Shefts Erroneously Characterized Petrakis and Huffman's Argument Regarding the Interception of SMS Text Messages.

Attached to his Reply, Shefts provided the Second Supplemental Affidavit of James Feehan [Doc. 65-1, pp. 13-19].  In his Affidavit, Feehan described the process by which Shefts' SMS text messages were sent over the Verizon Wireless network and logged on Access2Go's BES server:

---

[1] Effective December 1, 2009, the time limitation to file a Rule 59(e) motion was expanded from 10 to 28 days.  Thus, the cases pre-dating this amendment apply a 10-day time limitation under Rule 59(e).

> [W]hen Shefts authored an SMS text message via his personal Blackberry cellular telephone, the SMS message was sent through the Verizon Wireless network to be routed to its intended recipient. With Blackberry Enterprise Server (BES) installed and operating, the SMS text message was also sent through the Verizon Wireless network and routed to the BES server where the SMS database was updated to include the new SMS message.

[Doc. 65-1, pp. 14-15]. Feehan also described the process by which Shefts' SMS text messages were received over the Verizon Wireless network and logged on Access2Go's BES server:

> [W]hen Shefts received an SMS text message via his personal Blackberry cellular telephone from a third party, the SMS message was sent from the third party through the Verizon Wireless network and routed to Shefts personal Blackberry cellular telephone. After the Blackberry received the message, the Blackberry sent the SMS message back through the Verizon Wireless network to be routed to the BES storage media.

[Doc. 65-1, p. 15]. While Feehan's description of this process is generally accurate, it carefully avoids an important detail: the SMS text messages were not sent to Access2Go's BES server at the same time they were sent or received by Shefts.

Petrakis and Huffman attempted to make this point in their Response, as supported by the Affidavit of Jason Gossett [Doc. 60-3]. Gossett made this point when he described the difference between the process by which a Blackberry device sends or receives an email [Doc. 60-3, para. 21] and sends or receives an SMS text message [Doc. 60-3, paras. 22-24]. According to Gossett, when sending or receiving an email from a Blackberry device, the email message necessarily travels through the BES server to be directed to its intended recipient [Doc. 60-3, para. 21]. On the other hand, SMS text messages are sent without travelling through the BES server. See Gossett's Affidavit, where he states "SMS text messages are sent from a phone directly to that phones provider" [Doc. 60-3, para. 23]. At the time an SMS text message is sent or received, the message is saved on the Blackberry device regardless of whether BES logging is enabled. Sometime later, if the BES administrator has enabled the SMS text message logging feature, a log of those messages is created on the BES server through a wireless synchronization

3

process [Doc. 60-3, paras. 22-23]. Shefts' expert does not dispute Gossett's description of these processes [Doc. 65, p. 13].

Based upon these undisputed facts, Petrakis and Huffman argued that they did not "intercept" Shefts' SMS text messages within the meaning of the ECPA because the messages were not synchronized by Access2Go's BES server *at the time those messages were sent by Shefts* [Doc. 60, pp. 23-26]. However, in his Reply, Shefts mischaracterized Petrakis and Huffman's argument and asserted that Petrakis and Huffman were focusing on *the moment they accessed Shefts' SMS text messages*, rather than when the communications were logged by the BES server. See page 13 of Shefts' Reply [Doc 65], where he states:

> These communications were first intercepted. The fact that they were also later "accessed" does not detract from the fact that an initial interception occurred.

The Court accepted Shefts' mischaracterization of Petrakis and Huffman's argument, stating:

> [I]t appears to the Court that the parties' arguments are aimed at two very distinct actions. Plaintiff's argument is focused on the moment the BES software acquired his SMS text messages and logged them onto the Access2Go server. Petrakis and Huffman, on the other hand, focus on whether an "intercept" occurred at the moment that they accessed those SMS text messages that were already logged on the Access2Go server.

[Doc. 84, pp. 12-13 (quotations and citations omitted)]. A better understanding of how the BES server functioned to log Shefts' SMS text messages demonstrates that the SMS text messages were <u>not</u> logged by the BES server at the same time they were sent or received by Shefts.

### III.

**After Briefing Shefts' Motion for Summary Judgment, the Seventh Circuit Interprets an "Intercept" Under the ECPA.**

Because the Seventh Circuit had not yet weighed in on the meaning of an "intercept" under the ECPA, Petrakis and Huffman relied upon authority from other circuits to support their

4

argument that they did not intercept Shefts' SMS text messages, including Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107 (3d Cir. 2003); Steve Jackson Games, Inc. v. U.S. Secret Service, 36 F.3d 457 (5th Cir. 1994), Konop v. Hawaiian Airlines, Inc., 302 F.3d 868 (9th Cir. 2002), and United States v. Steiger, 318 F.3d 1039 (11th Cir. 2003).  This authority held that an "intercept" under the ECPA could only occur while an electronic message was being transmitted.

After the parties finished briefing Shefts' Motion for Summary Judgment, the Seventh Circuit addressed the meaning of an "intercept" under the ECPA in United States v. Szymuszkiewicz, 622 F.3d 701 (7th Cir. 2010), as amended (Nov. 29, 2010).  That case involved an employee who, without authorization, set up a "rule" to have his boss' emails forwarded to the employee's computer.  Id. at 703.  Specifically, the rule caused the employer's server, over which the employee had no administrative rights, to distribute two copies of every email intended for the boss: one to the boss and one to the employee.  Id. at 703-04.  Because both copies of the same message were sent within a second of the message's arrival and reassembly on the server, the boss and the employee received copies of the same message "with no more than an eyeblink in between."  Id. at 705.  The court concluded "[t]hat's contemporaneous by any standard" and that "[t]he copying *at the server* was the unlawful interception."  Id. at 704 (emphasis in original).

This Court interpreted Szymuszkiewicz to hold that "there is no timing requirement with regards to an 'interception' under the ECPA" [Doc. 84, p. 13].  However, Szymuszkiewicz held that the "contemporaneous cases" relied upon by the employee did not support his argument because his acquisition of the emails was contemporaneous with the intended recipient's receipt of those messages.  The court did not reject the notion that an "intercept" under the ECPA must

5

occur at the same time the messages are sent.  Neither did the court hold that there is no timing requirement with regards to an interception under the ECPA.

Unlike in Szymuszkiewicz, Shefts' SMS text messages were not sent or received by Shefts and synchronized with Access2Go's BES server "with no more than an eyeblink in between."  Rather, the SMS text messages sat on Shefts' Blackberry device until the next scheduled wireless synchronization.  Thus, there was no contemporaneous acquisition of the SMS text messages by Access2Go's BES server, and an intercept under the ECPA did not occur.

## IV.

## Conclusion.

This Court's conclusion that the BES server's feature enabling the logging of SMS text messages violates the ECPA has far-reaching implications.  The Wall Street Journal recently reported that 14.2 million Blackberry devices were shipped from August 27 to November 27, 2010 [Phred Dvorak and Stuart Weinberg, RIM's Profit Surges, Wall Street Journal, Dec. 16, 2010].[2]  Under this Court's ruling, the BES servers associated with these 14.2 million Blackberry devices, in addition to the Blackberry devices already in use, may be illegally "intercepting" SMS text messages in violation of the ECPA, unless there is a company policy that authorizes the monitoring.  This holding could subject millions of unknowing BES server administrators to liability.

Respectfully submitted,

By:   /s/  George Mueller
Mueller Anderson PC
609 Etna Road
Ottawa, IL 61350
Tele:  (815) 431-1500
Fax:  (815) 431-1051
george@muelleranderson.com

---

[2] Available at http://online.wsj.com/article/SB10001424052748703395204576023960514695744.html

        <u>/s/  J. Reed Roesler</u>
        J. Reed Roesler
        Jay H. Scholl
        Davis & Campbell L.L.C.
        401 Main Street, Suite 1600
        Peoria, IL 61602
        Tele: (309) 673-1681
        Fax:  (309) 673-1690
        jrroesler@dcamplaw.com
        00060501.DOCX

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JAMISON J. SHEFTS, an Individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10 CV 1104 |
| v. ) | |
| ) | |
| JOHN PETRAKIS, an Individual, ) | |
| KEVIN MORGAN, an Individual, ) | |
| and HEIDI HUFFMAN, an ) | |
| Individual, ) | |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

I certify that on January 6, 2011, the foregoing Defendants' Memorandum of Law in Support of Motion to Reconsider SMS Message Interception Ruling was electronically filed with the Clerk of the Court using the CM/ECF System upon:

Lane G. Alster
Elias, Meginnes, Riffle & Seghetti, P.C.
416 Main Street, Suite 1400
Peoria, Il 61602
lalster@emrslaw.com
*Attorney for Plaintiff*

Robert M Riffle
Elias, Riffle, Meginnes & Seghetti, P.C.
416 Main Street, Suite 1400
Peoria, IL 61602
rriffle@emrslaw.com
*Attorney for Plaintiff*

George Mueller
Mueller Anderson PC
609 Etna Road
Ottawa, IL 61350
george@muelleranderson.com

    /s/  J. Reed Roesler
J. Reed Roesler
Davis & Campbell L.L.C.
401 Main Street, Suite 1600
Peoria, IL 61602
Tele: (309) 673-1681
Fax: (309) 673-1690
jrroesler@dcamplaw.com

8