## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JAMISON SHEFTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   10-cv-1104 |
| | ) | |
| JOHN PETRAKIS, KEVIN MORGAN, | ) | |
| HEIDI HUFFMAN, and ACCESS2GO, | ) | |
| INC., an Illinois corporation | ) | |
| | ) | |
| Defendants. | ) | |

## **O R D E R  &  O P I N I O N**

This matter is before the Court on Defendants' Motion for Summary Judgment as to one claim within Count III of Plaintiff's Amended Complaint. (Doc. 262). For the reasons stated below, the Motion is granted.

On January 4, 2013, the Court issued an Order allowing Defendants to file the instant Motion for Summary Judgment, as the recent Fifth Circuit decision of *Garcia v. City of Laredo, Tx.*, 702 F.3d 788 (5th Cir. 2012) appeared to clarify the meaning of the term "access" as it is used within the Stored Communications Act ("SCA"), which is the basis of Count III of Plaintiff's Amended Complaint.[1] (Doc. 263). In so doing, the Court clarified that it had previously been mistaken in making an *obiter dictum* remark that may have appeared to hold that Defendants

---

[1] The only other remaining claim under Count III is Plaintiff's claim that Defendants violated the SCA by accessing his Yahoo! web-based email account by using a computer monitoring software that captured images of Plaintiff's Yahoo! account. The parties have not litigated the question of whether this type of monitoring is covered by the SCA, and the Court does not address that question herein.

had "accessed" Plaintiff's text messages within the meaning of the SCA; that statement had been made *sua sponte*, and without analysis. (Doc. 263 at 2-4; Doc. 248 at 25).

In his Response, Plaintiff has taken the fact that the Court has allowed Defendants to further litigate this question as an invitation to re-litigate the question of whether Defendants "intercepted" his text messages under the Electronic Communications Privacy Act ("ECPA"), which underlies Count I of the Amended Complaint. (Doc. 266 at 2 n. 1, 8-10). The Court rejects this attempt to induce it to reconsider issues that it has already thoroughly analyzed and decided. Pages 25-29 of the Court's September 12, 2012 Order on the parties' cross-motions for summary judgment on the issue of interception under the ECPA were devoted to such analysis of the text messages. (Doc. 248 at 25-29). In a footnote, Plaintiff claims that because the Court now considers Defendants' arguments under *Garcia*, it is only fair that the Court re-open consideration of his arguments as to interception, as well. (Doc. 266 at 2 n. 1). Unlike the question of whether the text messages were protected by the SCA when stored on the Blackberry or on Access2Go's server, which, as explained in the Court's January 4, 2013 Order, has never been specifically argued by the parties or analyzed by the Court, whether the text messages were "intercepted" has been fully litigated and has been decided, and Plaintiff presents no new arguments or authority to undercut the Court's previous decision.² Instead, he asks for the Court to take a "fresh look at the totality of the

---

² Plaintiff relies primarily on *United States v. Rodriguez*, a Second Circuit case from 1992, dealing with telephone wiretapping, stating that "when the contents of a wire communication are captured or redirected in any way, an interception occurs

law and the facts" – the Court has spent ample hours considering the law and facts as applied to this case, and stands by its carefully-considered decision that Defendants did not "intercept" Plaintiff's text messages within the meaning of the ECPA. The fact that Plaintiff, because Defendant's instant arguments are successful, is left without a federal remedy for the intrusion upon his text messages is not relevant to the application of the ECPA and the SCA; Congress has chosen to

---

at that time." 968 F.2d 130, 136 (2nd Cir. 1992). He does not address the fact that this Court must work within the framework established by the Seventh Circuit in the 2010 *United States v. Szymuszkiewicz*, which, dealing with email surveillance, holds that an "interception" must be "contemporaneous" with the transmission. 622 F.3d 701, 705-06 (7th Cir. 2010). Plaintiff correctly notes that the parties' prior briefing and the Court's previous analysis focused on this requirement, but he now wishes to rely on the broad statement from *Rodriguez*. The Court cannot simply ignore the contemporaneity requirement in favor of a statement from over 20 years ago, from another Circuit, addressing telephone interception, and Plaintiff does not explain how he would square these cases. Both texts and emails are necessarily stored as part of their transmission, while telephone conversations, the subject of *Rodriguez*, are ephemeral and can only be "captured or redirected" during transmission – it was thus not necessary for the *Rodriguez* court to impose a contemporaneity requirement, but such a requirement is needed in the case of email and text messaging. Moreover, though the Court did not previously cite *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003), in relation to the text message analysis, its analysis of the fact that the "synchronization" of the text messages to the BES server was not triggered by their initial transmission (and thus was not contemporaneous) also applies to show that the BES server did not function as "automatic routing software," which the *Steiger* court stated is required in order to intercept email messages. (Doc. 248 at 28-29).

Finally, Plaintiff attempts to argue that the timing of the synchronization between the Blackberry and the BES server is "irrelevant." The Court clearly disposed of this argument in its prior Order: it has been established the Blackberry automatically stored Plaintiff's text messages – Defendants did not cause this storage and so cannot be held liable for it. The BES server, in a separate action, obtained the messages from storage on Plaintiff's phone, after their transmission was complete – this "synchronization" was not linked to the transmission of a message, and so is not "contemporaneous" with it, as is required under *Szymuszkiewicz* in order to be deemed an "interception." (Doc. 248 at 26-29). The timing requirement stated in both *Szymuszkiewicz* and *Steiger* is the crux of "interception" for emails and text messages, and Plaintiff is wrong to attempt to ignore it.

protect only communications intercepted during transmission and those stored by communications providers, and the courts are not empowered to rewrite the statutes in order to expand that coverage.

### LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the Court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The Court draws only reasonable inferences. *Id.*

Once the movant has met its burden of showing that there are no genuine issues of material fact, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the court may not resolve issues of fact;

disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## UNDISPUTED MATERIAL FACTS[3]

On December 10, 2007, Plaintiff purchased a Blackberry 8703E, with service through Verizon Wireless, and he later replaced it with a Blackberry Curve 8330 on August 29, 2008. (Doc. 232, Ex. A at ¶ 5 and Doc. 232, Ex. A at ¶ 6). Plaintiff requested that his Blackberry devices be connected to the Blackberry Enterprise Server ("BES") at Access2Go. (Doc. 232, Ex. A at ¶ 5, 7). The BES server was part of the Access2Go server, and enabled Blackberry devices to be linked to the company server. (Doc. 152, Ex. A at ¶¶ 2).[4] Text messages do not pass through the BES server in the course of transmission from one phone to another; they are sent directly to and from the service provider, which in this case is Verizon Wireless. (Doc. 60, Ex. C at ¶ 23; Doc. 232, Ex. A, ¶5). The Blackberry smart phone devices

---

[3] These facts are drawn from the parties' Statements of Undisputed Material Facts and their responses to those statements. Unsupported and immaterial facts, including all those related only to Plaintiff's attempt to re-litigate the question of whether the text messages were "intercepted" under the ECPA, are excluded. As all of Plaintiff's Additional Material Facts relate solely to this question (indeed, they are copied directly from Plaintiff's previous Motion for Summary Judgment on this issue (Doc. 232 at ¶¶ 24-28, 33-38)), they are excluded.

The Court notes also that two of the evidentiary citations within Plaintiff's "Additional Material Facts" do not state to which document's exhibits they refer – they cite only to "Ex. __." (Doc. 266 at 4). As Plaintiff did not include any exhibits with his Response, these citations are wholly inadequate to support these factual assertions, especially because the record in this case contains 267 entries, many of which have exhibits.

[4] This fact was drawn by the Court from an earlier Motion for Summary Judgment by Defendants; it was undisputed by Plaintiff, and there is no basis for dispute at this time. (Doc. 152 at 4 & Doc. 170 at 7). The Court includes this fact because it clarifies that the BES server is located within the Access2Go server, which is undisputed but important.

5

automatically retain a copy of all sent and received text messages, which remain on the device unless they are deleted by the user. (Doc. 241, Ex. 1 at ¶ 4). The text messages are automatically retained on the Blackberry device regardless of whether the text message logging feature on the BES is enabled. (Doc. 241, Ex. 1 at ¶ 4).

On July 14, 2008, Shawn Patton assisted Defendant Huffman, at Defendant Petrakis' direction, in enabling the BES server's capability to log text messages stored on the Blackberry device. (Doc. 232, Ex. E at ¶ 15; Doc. 238, Ex. C at ¶ 6). With the logging feature enabled, the BES server "synchronized" with Plaintiff's Blackberry device, resulting in the BES server obtaining Plaintiff's text messages from the Blackberry device itself. (Doc. 232, Ex. D at ¶ 31; Doc. 238, Ex. B at ¶6). Before a text message can be synchronized with the BES server, the text message must first be stored in the database on the Blackberry device itself. (Doc. 238, Ex. B at ¶6). When synchronization occurs, the BES server copies the text messages that are stored on the Blackberry device and stores those copies on the BES server. (Doc. 238, Ex. B at ¶¶ 4-6).

## DISCUSSION

Defendants' instant Motion is based primarily on a recent decision from the Fifth Circuit, *Garcia v. City of Laredo*, and argues that the *Garcia* court's discussion of the terms of the SCA shows that their retrieval of Plaintiff's text messages was not a violation of the statute. Plaintiff's Response in opposition to the Motion notably does not argue that *Garcia* was wrongly decided or is in conflict with any other precedent. Instead, Plaintiff claims that the statutory terms defined and explained in *Garcia* cover the retrieval of his text messages, relying heavily on this

6

Court's prior holdings related to Defendants' accession of his Access2Go email messages.

In relevant part, the SCA provides:

(a) Offense.-- Except as provided in subsection (c) of this section whoever--
> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> (2) intentionally exceeds an authorization to access that facility;
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a). The term "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15) (incorporated by reference in 18 U.S.C. § 2711(1)). "Electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). The term "facility" is not defined in the statute.

The *Garcia* plaintiff was a former police dispatcher who claimed that the defendants had violated the SCA by accessing images and text messages stored on her cell phone. 702 F.3d at 790. The Fifth Circuit, affirming the district court's grant of summary judgment to the defendants, held that plaintiff's claim failed under the terms of the statute for two reasons. First, the SCA only protects against access to a "facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a). The court, looking to other courts' interpretations of the term

7

"facility," as well as the legislative history of the SCA, determined that the plaintiff's cell phone was not a protected "facility." 702 F.3d at 792-93. In addition, because the communications on the plaintiff's phone were not being stored there *by* her electronic communication service provider, they were not in protected "electronic storage" and were thus outside the scope of the SCA. *Id*. at 793. The Court finds Fifth Circuit's analysis persuasive, and sees no reason to disagree with it.

As explained above, the undisputed facts in this case show that Plaintiff's Blackberry automatically retained copies of his text messages, and that Defendants used the BES server to capture those stored messages from the Blackberry and then stored them on the Access2Go server. There were thus two sites in which Plaintiff's text messages were stored, and from which Defendants obtained them: the Blackberry itself, and the Access2Go server. The problem for Plaintiff's claim is that neither of these constitutes a "facility through which an electronic communication service is provided," nor are they a form of "electronic storage" "by an electronic communication service." As both of these components are required by the text of the SCA and neither is present, Plaintiff's claim must fail.

The first important definition is "electronic communication service." As noted above, this is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). As the *Garcia* court explained, "[c]ourts have interpreted the statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services, [as well as] Internet service providers." 702

F.3d at 792 (citing *United States v. Councilman*, 418 F.3d 67, 81-82 (1st Cir. 2005); *Theofel v. Farey–Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004); *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 462-63 (5th Cir. 1994)). In this case, it is clear that the "electronic communication service" relevant to the text messages is Verizon, not Access2Go. Plaintiff makes no argument and puts on no evidence that Access2Go in any way gave him "the ability to send or receive" his text messages. As stated in the Defendants' statement of material facts, which Plaintiff did not dispute: "[t]ext messages do not pass through the BES server in the course of transmission from one phone to another; they are sent directly to and from the service provider, which in this case is Verizon Wireless." Access2Go thus had no part in providing Plaintiff's text messaging service and cannot be considered an "electronic communication service" provider.

A relevant "facility," as defined by consistent caselaw, does not include "computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers." *Garcia*, 702 F.3d at 792 (quoting *Freedom Banc Mortgage Servs., Inc. v. O'Harra*, No. 2:11-cv-1073, 2012 WL 3862209, *9 (S.D. Ohio Sept. 5, 2012) (emphasis in *Garcia*. As applied to this case, neither the Blackberry nor the Access2Go server can be considered such a "facility" because neither is operated by the provider of the text messaging service. A Blackberry is merely a device, a miniature computer, that enables a person to use Verizon's text-messaging service, not a facility operated by Verizon. Access2Go's company server, was even less a "facility through which an electronic communication service is provided," as it does not enable a person to use

9

text messaging, but was simply the place Defendants chose to store the messages they had captured. Plaintiff's claim fails in the first instance because neither of the sites Defendants "accessed" was a "facility through which an electronic communication service is provided," as required by the SCA. 18 U.S.C. § 2701(a).

Similarly, Plaintiff's text messages were not in "electronic storage" as the term is defined by the SCA when Defendants obtained them. "Electronic storage" is "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). Neither the Blackberry nor the Access2Go server stored messages in "temporary, intermediate storage…incidental to the electronic transmission" of the messages – by the time the messages were on the Blackberry or the Access2Go server, their transmission was complete, and so the storage could not be "temporary, intermediate storage…incidental" to it. Likewise, neither site was used *by Verizon* (the "electronic communication service") for backup protection. Therefore, Plaintiff's claim also founders on this requirement.

Plaintiff relies heavily on the Court's prior determination that Defendants accessed Plaintiff's Access2Go-provided email from protected electronic storage, within the terms of the SCA. (Doc. 266 at 12-13). As explained above, only messages in electronic storage *by the provider of the communication service* are protected by the SCA. As has been noted by the Court on numerous occasions, Access2Go provided its employees, including Plaintiff, with an email service. Therefore, for

10

purposes of the SCA, it is a "provider" of that electronic communication service, and Defendant's accession of Access2Go's servers to retrieve Plaintiff's Access2Go email messages was within the terms of the statute. But being the provider of one communication service does not mean that a company provides all the communication services its employees use – the fact that the Court has held Access2Go to have been the provider of an "electronic communication service" as to the Access2Go email does not mean that it is such a provider as to all communications. In this case, Plaintiff's text messaging service was provided by Verizon, not Access2Go.[5] As the *Garcia* court explained, in order to violate the SCA, Defendants would have had to access Plaintiff's messages from storage by *Verizon*, not from where they were stored on the Access2Go server. The Court's previous decisions relating to the Access2Go email service are thus unhelpful to Plaintiff.

---

[5] Plaintiff points out that the Court, in discussing whether Access2Go, as the provider of the Access2Go email service, gave post-hoc authorization to Defendants' accession Plaintiff's Access2Go email, thus legitimizing it under the SCA, stated that "though Access2Go provided the server upon which Plaintiff's Blackberry text messages were stored after synchronization and thus could arguably authorize Defendants to access them, there is no evidence" supporting such authorization. (Doc. 249 at 11). This holding was necessary because Defendants had claimed that Access2Go's actions could also authorize the accession of the text messages. (Doc. 223 at 1). The Court did not engage in an analysis of whether the Access2Go server constituted a "facility" protected by the SCA when used to store text messages, or whether Access2Go was storing the messages as a provider of an "electronic communication service." Instead, looking at the arguments and evidence proffered by the parties, the Court took the most efficient route to disposing of the question: that no evidence supported the claimed authorization. This did not amount to a holding that Access2Go did in fact provide the text messaging service as required by the SCA. Now the Court realizes that it could also have disposed of the issue by holding that the text messages were not protected by the SCA when stored on the Blackberry or the Access2Go server, as explained in this Order. While it is often advisable to resolve legal questions such as this as soon as possible, courts also operate under significant time constraints, and must spend their time in what seems to be the most efficient manner, deciding the issues actually presented by the parties.

In addition to his erroneous attempt to equate the text messages with the Access2Go emails, Plaintiff also attempts to distinguish *Garcia* by pointing out that, unlike the *Garcia* defendants, Defendants here did not have physical control of Plaintiff's cell phone, but used the BES software to retrieve his messages from it. The BES software then stored the messages on the Access2Go server, from which Defendants retrieved them. Plaintiff claims that the fact that Defendants retrieved the messages from "a server" is important, though he does not explain how. This distinction is immaterial. The key point under the SCA is whether Defendants accessed Plaintiff's messages from storage *by the electronic communication service*, not whether they had physical control of his Blackberry, or whether the messages were stored on a server or other form of electronic storage.

Plaintiff fails put together any sort of plausible argument that Access2Go provided the text message communication service, and he cannot do so, as it is indisputable that Verizon provided the text messaging service. Since Defendants did not access Plaintiff's messages from a facility operated by Verizon or from where they were stored by Verizon, they cannot be held liable under the SCA and summary judgment on this claim must be granted in their favor.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 262) is GRANTED. Summary judgment is granted in favor of Defendants on Plaintiff's claim in Count III that their accession of his text messages violated the Stored Communications Act. The only issue remaining under Count III is whether Defendants accessed Plaintiff's Yahoo! email messages within the meaning of the

Stored Communications Act. This matter remains set for final pretrial conference on July 10, 2013, and jury trial beginning August 5, 2013.

Entered this <u>8th</u> day of February, 2013.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
