## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JAMISON J. SHEFTS, an Individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-1104 |
| | ) | |
| JOHN PETRAKIS, an Individual, KEVIN | ) | |
| MORGAN, an Individual, HEIDI | ) | |
| HUFFMAN, an Individual, and | ) | |
| ACCESS2GO, INC., an Illinois | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant Kevin Morgan's Motion for Summary Judgment as to Plaintiff's claims against him under Count I of the Amended Complaint. (Doc. 273). For the reasons stated below, the Motion is granted. In addition, the Court herein clarifies the current status of Count III of the First Amended Complaint.

### LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

### DISCUSSION

In his First Amended Complaint, Plaintiff claims that Defendants violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, the Illinois

Eavesdropping Statute, 720 Ill. Comp. Stat. § 5/14-1 et seq., and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 by intercepting, monitoring, and/or accessing (1) his Access2Go-provided email account, (2) his Yahoo! web-based email account, and (3) his text messages on his Blackberry device.[1] The Court has resolved a number of these claims through Motions for Summary Judgment, such that the only claims that remain in question are:

> Count I: ECPA
> - Whether Access2Go authorized Defendants' interception of Plaintiff's Access2Go email such that the interception was in the ordinary course of Access2Go's business
> - Whether Plaintiff consented to interception of either the Access2Go or Yahoo! email accounts
>
> Count II: Illinois Eavesdropping Statute
> - Whether Plaintiff had a reasonable expectation of privacy in any of the communications
>
> Count III: SCA
> - Whether Defendants accessed Plaintiff's Yahoo! email

The instant Motion for Summary Judgment addresses Plaintiff's claims under Count I against Defendant Morgan. As discussed further below, throughout this litigation the claims against Defendant Morgan have revolved around theories of "secondary" liability; Plaintiff has alleged that Morgan directed the other Defendants to engage in the various forms of monitoring alleged. The Court has had occasion to mention this "secondary" liability in other Orders, and has assumed, because neither party disputed it, that such liability could be available; the Court has never addressed the question now at issue, whether the ECPA actually provides

---

[1] Plaintiff also initially made a claim pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, but it was rejected after the first Motion for Summary Judgment attacking it, and has not been at issue since that ruling. (Doc. 209 at 32-34).

2

for "secondary" civil liability.[2] This Order will also address the status of the remaining claim under Count III, as Plaintiff's intentions regarding this claim have been unclear.

## I. Nature of Defendant Morgan's Motion for Summary Judgment

Responding to Defendant Morgan's Motion for Summary Judgment, Plaintiff first complains that Defendant Morgan has failed to include within his Motion for Summary Judgment a list of undisputed material facts as required by Local Rule 7.1(D), and argues that the Motion should be denied because of this "violation." Defendant responds by pointing out that he raises only a pure legal question of statutory interpretation, to which no facts are material. The Court agrees that no facts are material to the determination of whether "procurement" is a violation of the ECPA. Whether the ECPA includes civil "procurement" liability does not require any consideration of how such "procurement" might have occurred in this case, or of any other facts particular to this case. Summary judgment is an appropriate vehicle for the resolution of legal questions. *See Local 1239, Intern. Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers*, 9 F.Supp.2d 901 (N.D. Ill. 1998) (deciding question of statutory construction on summary judgment with no reference to particular facts of case); *see also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168 (5th Cir. 2000) ("Whether the [ECPA] authorizes a private civil action for procurement is a legal issue of statutory interpretation, which requires no presentation of evidence.").

---

[2]   Likewise, the Court has assumed that "secondary" liability may be available under the SCA, though the District Court for the District of Columbia's decision in *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz* calls this assumption into question. 891 F.Supp.2d 13, 26-27 (D. D.C. 2012)

Local Rule 7.1(D) does not require a party moving for summary judgment to vainly list a group of immaterial facts in order to meet some technical requirement; indeed, the Rule requires the listing only of "each undisputed material fact *which is the basis* for the motion for summary judgment" (emphasis added), and notes that "[m]aterial facts are only those facts which bear directly on the legal issue raised by the motion." If the Motion is not based on a particular factual situation and the Court's decision does not require the consideration of any facts, as in the case of a pure question of statutory interpretation, then no facts should be listed.[3] Defendant therefore did not err in choosing not to list any "undisputed material facts."

## II.   Whether the ECPA Includes Civil "Procurement" Liability

As explained above, Plaintiff alleges that Defendant Morgan violated the ECPA by directing others to intercept his communications; § 2511(1) of the ECPA provides that it is a violation of the statute to "procure" a person to unlawfully "intercept" communications.[4] Defendant Morgan's Motion for Summary Judgment argues that the ECPA's civil remedy provision, § 2520, does not contemplate such

---

[3]   Contrary to Plaintiff's view, this Court's opinion in the case of *Moran v. United States* does not support Plaintiff's contention that Defendant's Motion is in violation of the Local Rules and should be rejected. In *Moran*, the Court noted that a party *responding* to a motion for summary judgment, if that party has the burden of proof at trial, bears the "onus…to present…'specific facts showing a genuine issue for trial,'" and that Local Rule 7.1 explains the proper manner in which to present these facts. No. 07-cv-4077, 2010 WL 744299, *2 (C.D. Ill. Feb. 25, 2010). *Moran* does not stand for the proposition that in all cases a *defendant* must include a statement of facts with its motion for summary judgment based on a question of pure statutory interpretation.

[4]   In his First Amended Complaint, Plaintiff specifically alleged that "Defendants…directed…the installation of spyware…for the purpose of intercepting" his communications, "Petrakis intercepted," and "Defendants intercepted." (Doc. 38 at 12). He does not use the term "procures," though the "directed…the installation" allegation would suffice to indicate such a claim.

4

"procurement" liability for civil defendants, and so he should be granted summary judgment as to this portion of Plaintiff's case against him. The Court has determined that the statutory language, clear weight of persuasive authority, and legislative history indicate that a civil plaintiff may not recover under the ECPA for a defendant's "procurement" of another to intercept the plaintiff's communications.

Prior to 1986, § 2520 provided:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, *or procures any other person to intercept, disclose, or use such communications*, and (2) be entitled to recover from any such person [damages, attorney's fees, and costs].

18 U.S.C. § 2520 (1970) (emphasis added). In 1986, though, Congress amended the statute so that it now reads:

[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). The clause "or procures any other person to intercept, disclose, or use such communications" was removed from the portion of the statute providing a civil remedy. Plaintiff claims that this alteration to the statute's text does not affect his ability to recover from Defendant Morgan for "procuring" the interception of his communications, while Defendants argue that the alteration reflects Congress' intent to eliminate such liability.

In *Peavy v. WFAA-TV, Inc.*, the Fifth Circuit, addressing what appeared to be an issue of first impression, looked to the plain text of the statute to determine that the alteration was intended to eliminate the ability to sue one who only "procures"

5

another to intercept a plaintiff's communications. 221 F.3d at 168-69. As that court explained, "[t]he amended provision does *not* have the 'procures any other person' language, extending civil liability to 'the person or entity which engaged in *that violation*.' And, the referenced 'violation' is 'intercepted, disclosed, or intentionally used;' there is *no* mention of 'procures.'" *Id*. at 168-69 (emphases in original). The Fifth Circuit, citing the familiar rule that amendments to statutes are presumed to be meaningful, held that Congress intended to excise civil "procurement" liability from the ECPA. *Id*. at 169 (citing, *inter alia, Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).

Following *Peavy*, both the Tenth Circuit and the District Court for the District of Columbia agreed that § 2520(a), as amended in 1986, does not impose civil liability on one who merely "procures" another to illegally intercept communications. *Kirch v. Embarq Management Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012); *Gaubatz*, 891 F.Supp.2d at 23-24. The *Gaubatz* court, citing *Peavy* and several district court cases, engaged in its own analysis of the statutory text and determined that "the plain language of the statute limits civil liability to interception, disclosure, and use." 891 F.Supp.2d at 24 (citing *Peavy v. WFAA–TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000); *Lonegan v. Hasty*, 436 F.Supp.2d 419, 427–28 (E.D. N.Y. 2006); *Hurst v. Phillips*, No. 04–2591 M1/P, 2005 WL 2436712, *3 (W.D. Tenn. Sept. 30, 2005); *Gunderson v. Gunderson*, No. 02–1078–CVW–ODS, 2003 WL 1873912, *2 (W.D. Mo. Apr. 14, 2003); *Buckingham v. Gailor*, No. 00–CV–1568, 2001 WL 34036325, *6 (D. Md. Mar. 27, 2001)). The Tenth Circuit has also

followed the majority position in "presum[ing] that this deletion [of the 'procures' clause] was intended to change the statute's meaning." *Kirch*, 702 F.3d at 1247.

Both the *Gaubatz* and *Kirch* courts, as well as both Plaintiff and Defendant Morgan in this case, recognize that the Eastern District of New York appears to be the lone outlier in interpreting the 1986 amendment to § 2520(a). In *Lonegan v. Hasty*, that court disagreed with the *Peavy* interpretation because it believed that

> the more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations. … Pursuant to Section 2511(1)(a), the class of persons whose communications are intercepted in violation of the Wiretap Act includes those persons whose communications are intercepted by someone who was procured to do so by a third party. In such case, both the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue any person or entity who engaged in that violation.

436 F.Supp.2d 419, 428 (E.D. N.Y. 2006). The *Lonegan* court explained that its reading of the legislative history suggested that the 1986 changes "were cosmetic rather than substantive." *Id.* (citing S.Rep. No. 95-797, at 26-27 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555, 3580-81). Importantly, though, the *Lonegan* court did not rely on this interpretation of § 2520(a) in disposing of the motion to dismiss before it, since, "[a]s an alternative to their procurement theory of liability, plaintiffs assert that [the defendant] intercepted their communications directly. Therefore, even if the procurement theory fails, the direct interception theory is sufficient to support the claims." *Id.* (citing *DIRECTV Inc. v. Barrett*, 311 F.Supp.2d 1143, 1146 (D. Kan. 2004) (also avoiding the question of whether § 2520(a) retains "procurement" liability)). Because its interpretation of § 2520(a) was not essential to the court's ruling, the *Lonegan* court's interpretation is merely *dicta*.

7

The *Peavy* court and the courts following it have reached a reasonable understanding of the relevant statutory language. Though this Court believes the *Lonegan* court's interpretation of the language is also reasonable, the weight of persuasive authority, and especially the history of the statute's amendment, compel the Court to agree with the *Peavy* interpretation. To allow civil "procurement" liability would render meaningless Congress' 1986 removal of "procures any other person" from that section. Moreover, the Fifth Circuit's *Peavy* decision has been on the books for nearly thirteen years, and has since been followed by the Tenth Circuit and by District Courts in other Circuits, but Congress has not chosen to amend the statute in order to correct *Peavy*'s interpretation. Even the *Lonegan* court disagreed with the *Peavy* interpretation only in *dicta*. Therefore, because one who merely "procures" the interception of communications is not civilly liable under the ECPA, summary judgment is granted in favor of Defendant Morgan on this narrow question. He cannot be held liable merely for "procuring" others to intercept Plaintiff's communications.

The Court acknowledges that it previously addressed Plaintiff's ECPA "conspiracy" allegation against Morgan, and denied Defendants' Motion for Summary Judgment concerning it, assuming that such liability may be available. (Doc. 209 at 34-36).[5] At that time, Defendants did not point the Court's attention to the fact that "procurement" is not a basis for civil ECPA liability under § 2520,

---

[5]    Plaintiff cites to the Court's discussion of his SCA claim against Morgan at pages 37-38 of the November 29, 2011 Order on Defendants' Motion for Summary Judgment (Doc. 209), which is of course inapplicable to the ECPA claim. As discussed below, however, there are no remaining claims under the SCA, so the Court need not address the question of whether "secondary" liability is available under the SCA.

focusing instead on the argument that Plaintiff had insufficient evidence to support a "conspiracy" or "procurement" claim. At that time, the Court only answered the question posed by the parties, and could not grant summary judgment to Defendant Morgan because it could not "conclude that Morgan did not 'intentionally…procure [Petrakis and Huffman] to intercept" his communications under § 2511(1)(a)," which is the portion of the statute that defines a violation of the ECPA. As the Court noted in that Order, though, "Plaintiff does not dispute Defendants' argument that Morgan did not actually 'intercept' his communications," but relies only on "procurement" as his alleged violation. (Doc. 209 at 35).

It is now clear that "procurement" cannot support civil ECPA liability, and it is likewise clear that there can be no civil "conspiracy" (or "aiding and abetting" or "agency") liability under the ECPA, as such forms of liability would permit plaintiffs to circumvent Congress' intent to limit civil liability to those who have actually engaged in the prohibited practices; anyone who "procures" an interception could also be called a "conspirator," an "aider and abettor," or a "principal" in an agency relationship. Plaintiff is incorrect in stating that the District Court for the District of Columbia recognized an agency-type theory of liability under the ECPA in *Gaubatz*. There the plaintiffs had alleged a "conspiracy" or "aiding and abetting" form of liability, while the defendants argued that no such "secondary liability" was cognizable under the ECPA. *Gaubatz*, 891 F.Supp.2d at 24. Because the plaintiffs failed to put forth a meaningful response to the defendants' arguments the court treated the argument as conceded, but it also noted that "secondary liability" under the ECPA was untenable for the same reasons the court rejected "secondary

liability" under the SCA: that Congress had not included such liability under the statute. *Id.* at 25-27. *Gaubatz* in fact states in *dicta* that no form of civil "procurement," "agency," or "conspiracy" liability would be available under the ECPA. *See also Kirch*, 702 F.3d at 1247 ("§ 2520 does not impose civil liability on aiders or abettors").

The Court thus concludes that Defendant Morgan cannot be held liable under the ECPA under "procurement," "agency," "conspiracy," or any other "secondary" theories of liability, and grants summary judgment in his favor on this question.

### III. Whether Plaintiff May Proceed with Claims of Illegal "Use" or "Disclosure" of His Intercepted Communications Against Defendant Morgan

As an alternative to his unsuccessful argument that the ECPA contemplates civil "procurement" liability, Plaintiff argues that he can nonetheless proceed with an ECPA claim against Defendant Morgan for "use" or "disclosure" of his illegally intercepted communications. As noted above, this question was not raised by Defendant Morgan's instant Motion for Summary Judgment, and so Plaintiff's evidence as to those questions need not be considered. However, given that Plaintiff's brief seems to indicate an intention to proceed at trial with these claims, the Court must discuss their status.

In Plaintiff's First Amended Complaint, as well as throughout the litigation of this case, Plaintiff has always alleged only "interception," and, in the case of Defendant Morgan, "direction" of others to intercept (also known as "procurement," discussed above), as the violations of the ECPA he seeks to redress. (Doc. 38 at 12-13). Plaintiff, Defendants, and the Court have repeatedly characterized the claims

as concerning "interception," and have never addressed the questions of "use" or "disclosure" under the ECPA. Plaintiff cites to evidence acquired throughout the litigation that he now argues showed "use" or "disclosure" by Morgan, but it is hornbook law that he cannot amend his pleadings via summary judgment briefing. *See*, *e.g.*, *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)). The earlier introduction of some of this evidence in other summary judgment briefing also does not suffice to amend his pleadings to include "use" or "disclosure," both because of the above-cited rule, and because it was introduced to support other claims, with absolutely no reference to claims for "use" or "disclosure." These earlier statements were not sufficient to put Defendant Morgan (or any of the other Defendants) on notice that they may have to defend claims for "use" or "disclosure," or to inform the Court that such claims were at issue. Plaintiff has pointed to no instances where he has stated that he sought to pursue ECPA claims based on "use" or "disclosure," and it is neither Defendants' nor the Court's duty to scour his briefs for hints as to additional claims he might be interested in raising. At this late date, the Court cannot permit Plaintiff to amend his Complaint to include these claims against Morgan or any of the other Defendants; they have been forfeited.

**IV.    Status of Count III**

As a final matter, the Court must address an issue concerning Count III, which arises under the Stored Communications Act ("SCA"). In earlier orders, the Court rejected Plaintiff's SCA claims relating to his Access2Go email account and his text messages; Access2Go authorized the accession of Plaintiff's Access2Go

email messages, and the Defendants did not access the text messages from storage as those terms are used in the SCA. (Docs. 249 & 268).

On February 20, 2013, the Court directed Plaintiff to indicate whether he intended to pursue his claim for Defendants' alleged accession of his personal Yahoo! email account, as his earlier brief on damages seemed to imply that he had dropped that last-remaining SCA claim by failing to mention it at all or to give a damages estimate for the claim as directed. (Doc. 269). On February 28, in response to this Order, Plaintiff filed a "Notification."[6] (Doc. 270). This "Notification" was not responsive to the February 20 Order, in that it merely stated that Plaintiff wished to preserve for appeal the claims previously rejected by the Court, but failed to indicate whether Plaintiff wished to go forward with a trial on the Yahoo! email claim under Count III. It also did not supply the damages estimate for the Yahoo! email claim that had been missing from the first damages brief. The only mention of the Yahoo! email account in the "Notification" concerns allegations under the ECPA; the majority of the discussion addressed the rejected Access2Go-email SCA claim.[7] (Doc. 249; Doc. 270 at 2). The Court should not have to guess at deciphering a party's answer to a simple, straightforward question. Because this "Notification" did not answer the direct and narrow question put to Plaintiff, whether he wished to try

---

[6] On its initial reading, the Court misunderstood the requests made in the "Notification," and issued an Order discussing the damages available on the Yahoo! email SCA claim; in light of the instant discussion, that Order is stricken as moot. (Doc. 272).

[7] Plaintiff's assertions in the "Notification" relate primarily to whether Defendants accessed his Access2Go email from storage, but the Court's rejection of his claim was based on the fact that Defendants had authorization from Access2Go, the provider of the email system, to access the messages, not on whether they actually undertook such access. (Doc. 249).

the Yahoo! email claim under the SCA, the Court must again assume that Plaintiff does not wish to try the Yahoo! email claim in the upcoming jury trial, and that Count III has therefore been completely resolved at this level.

In his "Notification," Plaintiff also asked the Court to "preserve Count III of the First Amended Verified Complaint in the event that evidence admitted at trial supports liability against Defendants pursuant to the Stored Communications Act." (Doc. 270 at 3). To the extent Plaintiff wishes to retain the ability to present his SCA claims (or any other previously-rejected claims) to the jury in the upcoming trial, such a request is rejected. The Court has already ruled, via summary judgment, that neither the Access2Go email claim nor the text message claim under that statute are viable as a matter of law. (Docs. 249 & 268). Summary judgment is not a preliminary ruling that may be set aside to allow another attempt at trial, but is a final ruling. It is, as the Seventh Circuit has put it, the "put up or shut up" moment in a case, at which plaintiffs must put on the best case they have to defeat a defendant's motion. *See, e.g., Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011) (citing *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010)). Since Plaintiff failed to defeat Defendants' Motions for Summary Judgment as to the Access2Go email and text message claims under the SCA, he cannot go forward to try those claims to the jury. To permit that would be to undermine the entire purpose of summary judgment. If Plaintiff disagrees with the Court's rulings in its summary judgment orders, he is free to appeal them after the trial. At this level, though, they are final. Plaintiff is warned against attempting to reassert his rejected claims under Count III in the final pretrial order or before the jury. *See*

*Serritella v. Markum*, 119 F.3d 506, 512-13 (7th Cir. 1997) (citing *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 682 (7th Cir. 1990)).

## CONCLUSION

For the foregoing reasons, Defendant Morgan's Motion for Summary Judgment (Doc. 273) is GRANTED. Plaintiff MAY NOT PROCEED on a "procurement" claim under the ECPA. In addition, Plaintiff MAY NOT PROCEED on "use" or "disclosure" claims under the ECPA against any of the Defendants. Finally, the Court herein DETERMINES that Plaintiff has implicitly indicated his abandonment of the Yahoo! email claim under the SCA, such that Count III has been completely resolved in Defendants' favor. Plaintiff has not waived his right to appeal the Court's rulings as to the Access2Go and text message claims under the SCA, but MAY NOT REASSERT those claims at trial. This matter remains set for final pretrial conference on July 10, 2013, and jury trial beginning August 5, 2013.
IT IS SO ORDERED.


Entered this 21st day of June, 2013.


                                               s/ Joe B. McDade
                                               JOE BILLY McDADE
                                       United States Senior District Judge