**E-FILED**
Monday, 22 July, 2013  01:18:17 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JAMISON J. SHEFTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   10-cv-1104 |
| | ) | |
| JOHN PETRAKIS, KEVIN MORGAN, | ) | |
| HEIDI HUFFMAN, and ACCESS2GO, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on a *sua sponte* effort to "simplify the issues" for trial as suggested in Federal Rule of Civil Procedure 16, as well as a Motion for Reconsideration by Plaintiff. In the proposed Final Pretrial Order and proposed jury instructions submitted by the parties, Defendants raised the question of whether the basis of Plaintiff's Count II, the Illinois Eavesdropping Act, includes a civil cause of action for eavesdropping on electronic communications as Plaintiff alleges. Plaintiff's Motion for Reconsideration challenges the Court's order barring him from presenting claims for "use" or "disclosure" of his communications under the Electronic Communications Privacy Act. (Doc. 285).

In his First Amended Complaint, Plaintiff claims that Defendants violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, the Illinois Eavesdropping Act ("IEA"), 720 ILL. COMP. STAT. § 5/14-1 et seq., and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 by intercepting, monitoring, and/or accessing (1) his Access2Go-provided email account, (2) his Yahoo! web-based email

account, and (3) his text messages on his Blackberry device.[1] The Court has resolved a number of these claims through Motions for Summary Judgment, such that, prior to the issuance of the instant Order, only Plaintiff's Count I and Count II claims remained, and the issues under Count I had been simplified. This matter is set for jury trial beginning August 5, 2013. The instant Order disposes of Plaintiff's Count II, such that only Plaintiff's Count I remains for trial.

### ILLINOIS EAVESDROPPING ACT

The first issue now before the Court turns on whether 720 ILL.COMP.STAT. 5/14-6, the civil remedy provision of the IEA includes a claim for eavesdropping upon "electronic communications," rather than only oral "conversations." While the definition of a criminal violation under the IEA covers such eavesdropping, the text of the civil provision does not; it only addresses "conversations." 720 ILL.COMP.STAT. 5/14-2 & 5/14-6. The proposed Final Pretrial Order included the question of whether the IEA covers Plaintiff's allegations as a disputed legal issue, and it was incorporated into Defendants' proposed jury instructions by asking the jury to determine whether Defendants had eavesdropped upon any of Plaintiff's oral "conversations." Reviewing these submissions, the Court realized that this was an issue of law that the Court should deal with prior to trial, since it would either have to be addressed during the trial in consideration of the proposed jury instructions,

---

[1]    Plaintiff also initially made a claim pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, but it was rejected after the first Motion for Summary Judgment attacking it, and has not been at issue since that ruling. (Doc. 209 at 32-34).

or by the Court in a post-trial motion.[2] Even if the issue were presented to the jury, the Court would have to address the underlying question of whether "electronic communications" are covered by the civil IEA remedy, since it would have to decide at a jury instruction conference which version of the instructions to present to the jury. It is thus inevitable that the Court would have to deal with this question, so it is better to resolve it in advance of trial and thereby simplify the trial proceedings. For that reason, the Court ordered the parties to brief the question; those briefs are now ready for consideration.

Defendants argue that the IEA's plain text, as well as its statutory history, shows that the Illinois legislature did not intend to create a private civil cause of action for eavesdropping upon "electronic communications." Plaintiff argues in opposition that the statute is ambiguous and the statute's legislative history shows that the legislature intended to include a civil cause of action for the injuries he alleges, and that, even if the statute cannot be read to include a civil cause of action for eavesdropping upon "electronic communications," the Court should find that there is an "implied" cause of action. If the Court determines that Plaintiff cannot rely upon the IEA, Plaintiff requests that he be permitted to amend his complaint to include common law causes of action, including intrusion upon seclusion.

Plaintiff also asks the Court, if it determines that the IEA's civil cause of action does not cover his claim, to still allow him to present his case under the IEA to the jury, in order to "avoid the possibility that a separate trial would need to be held in the event that an adverse ruling regarding the IEA is reversed on appeal."

---

[2]     Neither party had previously pointed out this discrepancy between the criminal and civil provisions.

(Doc. 284 at 17). This last request is easily disposed of and readily denied. The Court is confident in its analysis of the IEA's applicability to this case, and will not permit Plaintiff to needlessly complicate the issues, lengthen the trial, and confuse the jury by presenting evidence, arguments, and jury instructions relating to a claim that has no basis in law.

## I.      Statutory Text

The IEA is found within Chapter 720 of Illinois' statutory code, which is devoted to criminal offenses. The statute, in relevant part, provides that "(a) A person commits eavesdropping when he: (1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication." 720 ILL.COMP.STAT. 5/14-2. In a separate section, the IEA also provides for a civil remedy, stating that "(1) Any or all parties to any conversation upon which eavesdropping is practiced contrary to this Article shall be entitled to" certain remedies. 720 ILL.COMP.STAT. 5/14-6. Both "conversation" and "electronic communication" are defined in the statute: as important to the instant analysis, a "conversation" is "any oral communication between 2 or more persons", while an "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a…computer." 720 ILL.COMP.STAT. 5/14-1(d) & (e). The parties here do not dispute that Plaintiff's allegations only concern "electronic communications," and not "conversations" in the sense of "oral communications" as defined in the IEA.   By the plain text of the statute, then, the IEA provides for criminal liability for those

who eavesdrop upon both oral communications ("conversations") and emails and text messages ("electronic communications"), but only offers a civil remedy to those whose *oral* communications are eavesdropped-upon. Defendants thus argue that Plaintiff has no statutory authority on which to base his IEA claim.

"In construing a statute, [the Court's] primary objective is to give effect to the intent of the legislature. The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning." *Snyder v. Heidelberger*, 953 N.E.2d 415, 420-21 (Ill. 2011) (citing *Blum v. Koster*, 919 N.E.2d 333 (Ill. 2009); *Illinois Department of Healthcare & Family Services v. Warner*, 882 N.E.2d 557 (Ill. 2008)).[3] Thus, the first rule of statutory interpretation is that the text of the statute, where not ambiguous, must be given its plain meaning. *Id*. at 421.

Plaintiff's primary argument is that the statute's use of "conversation" and "electronic communications" is ambiguous because, in three subsections, the statute refers to both "oral conversations" and "electronic communications." (Doc. 284 at 6-7). Plaintiff asserts that, because "conversation" is defined in the definitions section of the statute by reference to the word "oral," such usage assumes that there might be non-oral "conversations," arguing that "if 'conversation' already meant 'oral conversation,' there would have been no reason to insert the word 'oral'" in §§ 5/14-1, 5/14-2, and 5/14-4. (Doc. 284 at 7). Having reviewed these subsections in context of the entire statute, the Court finds that the seemingly-redundant use of the term

---

[3]     In interpreting a state statute, a federal court must apply that state's statutory construction principles. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998).

"oral" was plainly intended to further clarify the difference between a spoken conversation and a written electronic communication; in effect, it carried the definition of the term "conversation" into the operative parts of the statute. Similarly, the use of "any" to modify "conversation" still modifies only the term "conversation" *as defined in § 5/14-1*; "any conversation" cannot refer to both "conversations" and "electronic communications," since each term is separately defined.[4] The legislature would have had to say something like "any conversation or communication," in order to convey the meaning Plaintiff suggests.

Moreover, the exclusion of "electronic communications" from the civil remedy provision is not an absurd or even unreasonable effect of the statute. It is not unreasonable to find that the legislature intended to keep civil liability under the statute to a minimum by not including electronic communications within the civil remedy provision. Conversely, it is also not unreasonable to assume that the legislature felt that only eavesdropping upon oral conversations created the sort of harms that should be remedied by damages, while electronic communications were adequately protected by the criminal provision.

The Court therefore finds that the IEA, as written, is clear in distinguishing between oral conversations and written electronic communications such as emails and text messages, and in providing no civil remedy for eavesdropping upon electronic communications.

---

[4]    As discussed further below, the legislative history emphatically supports this clear reading.

## II.    Legislative History

Courts only turn to legislative history for aid in interpreting a statute when the text of a statute is ambiguous. *People v. Jones*, 824 N.E.2d 239, 242 (Ill. 2005) (citing *People v. Whitney*, 720 N.E.2d 225 (Ill. 1999)) ("Where the legislature's intent is not clear from the statute's plain language, the court may examine the legislative history."). As explained above, Plaintiff's attempt to find an ambiguity that would justify resort to legislative history fails – the statute could not be clearer, and so the Court need not look to the legislative history. In this case, though, the legislative history is at least as supportive of Defendants' position as Plaintiff's, and in fact appears to confirm the plain text of the statute.

Prior to 2000, civil liability under the IEA was co-extensive with the statute's criminal prohibition; both sections addressed eavesdropping on "conversations." In that year, though, the Illinois legislature made eavesdropping on "electronic communications" a criminal offense, and added the relevant definition of that term to § 5/14-1 of the statute via Public Act 91-657, which originated as House Bill 526, "An Act concerning criminal law." No change was made to the civil remedy provision found at § 5/14-6.

As originally introduced in the Illinois House of Representatives, House Bill 526 added language that would have covered electronic communications to the definition of "conversation," rather than changing the section defining the elements of the offense. (Doc. 283, Ex. F). If this version had been enacted, electronic communications would have been included in the "conversations" protected by both the criminal and civil provisions of the IEA. However, the legislature subsequently

changed the structure of the amendment, separately defining "electronic communications," and adding coverage of such communications to the definition of the criminal offense at § 5/14-2. (Doc. 283, Ex. H). *See also* 1999 ILL. LEGIS. SERV. P.A. 91-657 (H.B. 526).

As Plaintiff points out, "there is no dispute between the parties that, if House Bill 526 as engrossed had been approved and become law, the civil cause of action would have provided a civil remedy to an individual for any crime committed pursuant to the IEA." (Doc. 284 at 9). Contrary to Plaintiff's argument, though, the fate of House Bill 526 cuts in favor of Defendants. Courts must apply the law as it is, not as it might have been, and, as Plaintiff concedes, House Bill 526 "as engrossed" did not become law. House Bill 526 "as enrolled" became law, and this version of the bill did not include a civil remedy for eavesdropping upon electronic communications; the version enacted does not change the scope of the civil remedy provision, and the version that was rejected would have done so. Plaintiff argues that this was due to an oversight, noting that the legislators apparently did not debate the decision to separately define "electronic communications" and include them only within the criminal offense. While this is a possible interpretation, the text actually reflects the more-likely possibility that the legislature intentionally separated "conversations" from "electronic communications," and protected the latter only via the criminal law; since this alteration to the bill more-clearly carried out the legislature's intent, there was no need to specifically debate it. The Court cannot "read in" that which the legislature appears to have intentionally left out.

Not only is the statute unambiguous, the legislative history does not support Plaintiff's argument.

The unambiguous use of "any conversation" in § 5/14-6 and both "oral conversation" and "electronic conversation" in §§ 5/14-1, 5/14-2, and 5/14-4 is clarified by the legislative history. As noted above, the civil remedy provision was not changed by the 2000 amendment, so the use of "any conversation" in § 5/14-6 could not have been motivated by a desire to include both "conversations" and "electronic communications" within that section's coverage, since that language predated the inclusion of "electronic communications" in the IEA. Likewise, the word "oral" was used to modify "conversation" in § 5/14-1 as the statute existed prior to the 2000 amendment, and was added to §§ 5/14-2 and 5/14-4 by the 2000 amendment, when the term "electronic communication" was also added to those sections. The use of the term "oral conversation" in some sections of the IEA, then, does not imply that the unmodified use of "conversation" in § 5/14-6 should be read to include both "conversations" and "electronic communications," since "oral conversation" was unambiguously used in the statute prior to 2000.

The history of Public Act 91-657 helps to explain why the legislature focused only on expanding the scope of the criminal offense. The legislative history documents the parties have submitted indicate that the amendments were requested by the Cook County State's Attorney's Office in order to allow it to combat criminal gangs' use of electronic devices to intercept law enforcement communications. (Doc. 283, Ex. A at 1, Ex. B at 2, Ex. C at 1). The legislature was simply not concerned with the civil cause of action; it had only been asked to

address criminal activity that was thwarting law enforcement. With this understanding of the legislative history, it is obvious that the legislature did not intend to make any change to the civil cause of action, and that its amendments to the IEA accomplished the intended goal.

Though the text of the statute was clear, and there was no need to resort to the IEA's legislative history, the Court's review of that history confirms the plain reading of the statute's text: the IEA's civil cause of action does not permit recovery for eavesdropping upon "electronic communications," though such eavesdropping is a criminal offense.

## III.   Implied Cause of Action

Finally, Plaintiff argues that the Court should find that there is an implied civil cause of action for eavesdropping upon electronic communications under the IEA, and thereby allow him to proceed with his Count II.  Plaintiff cites no case in which any court has implied such a cause of action under the IEA, and the Court's research has not revealed any, either. The cases Plaintiff does cite, and which the Court has reviewed in its research, indicate that it would be inappropriate to imply a cause of action in this case.

The Illinois courts will imply a civil remedy to redress injuries under statutes that do not explicitly provide for such remedies, but there are limits to such implied causes of action.

> Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted;(2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (Ill. 1999). The fourth factor is the most important limitation on the power of courts to imply a cause of action: a cause of action may be implied "*only* in cases where the statute would be ineffective, as a practical matter, unless such an action were implied." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1120 (Ill. 1999) (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill.1999)) (emphasis added). *See also Cima v. Wellpoint Healthcare Networks, Inc.*, No. 05-CV-4127-JPG, 2006 WL 1914107, *5 (S.D. Ill. Jul. 11, 2006) (characterizing this as most important factor). Thus, the absence of this factor alone will prevent a court from implying a cause of action. *Abbasi*, 718 N.E.2d at 185 (quoting *Board of Education v. A, C & S, Inc.*, 546 N.E.2d 580, 600 (1989)) (unnecessary to consider first three factors where fourth is lacking). Applying this test, it appears that Plaintiff is likely a member of the class to be protected under the IEA, and that his alleged injury is likely one that the statute was intended to prevent.[5] However, the latter two elements are missing.

While it does not seem, superficially, to be inconsistent with the purpose of the statute to permit Plaintiff to proceed with an implied cause of action against Defendants, the Southern District of Illinois' analysis in *Cima v. Wellpoint*

---

[5]    The legislative history discussed above can be read as calling this assumption into question: if the legislature's goal in amending the IEA in 2000 was to address the problem of gangs' eavesdropping upon law enforcement communications, as appears to have been the case, then the IEA's protection of "electronic communications" was not intended to protect Plaintiff or his "electronic communications." *See Fisher*, 722 N.E.2d at 460-61 (discussing legislative history to limit class of protected individuals). The Court's analysis does not hinge upon this observation, though, because the statute itself contains no such limitation upon its intended scope. There is no indication in the statute that eavesdropping upon private (non-law enforcement) "electronic communications" is exempt from criminal penalties.

*Healthcare Networks, Inc.* indicates that the Court should consider whether the existence of certain enforcement mechanisms evinces an intent to exclude others. 2006 WL 1914107, *8 In *Davis v. Dunne*, the Illinois Appellate Court "found that the enumeration of three governmental agencies to conduct prosecutions for violations of the [Civil Service] Act indicated the legislature's intention to limit the remedies provided thereunder to the criminal penalties set forth in the Act." *Cima*, 2006 WL 1914107, *8 (citing 545 N.E.2d 539, 540 (Ill. Ct. App. 1989)). In light of *Davis*, the *Cima* court was "hesitant" to accept the plaintiffs' argument that whether an administrative agency actually chose to enforce a given provision of a statute was relevant to whether the legislature's purpose would be furthered by implying a private cause of action.[6] *Cima*, 2006 WL 1914107, *8. To the *Cima* court, the implication of these cases is that the delegation of enforcement authority to a governmental entity is "strong evidence of the legislature's intention not to create a private right." *Id*.

This Court finds that the fact that the legislature did create both criminal liability for Plaintiff's alleged injury and an explicit cause of action for different violations of the IEA indicates that it is inappropriate to imply a private cause of action for eavesdropping upon "electronic communications" here. The fact that it did not choose to expand the private cause of action to include "electronic

---

[6]    In *Cima*, the plaintiffs cited an Illinois Appellate Court decision implying a cause of action where the administrative agency charged with enforcement of the statute provided a letter stating that it did not enforce the relevant provision. 2006 WL 1914107, *8 (citing *Casualty Ins. Co. v. Hill Mech. Group*, 753 N.E.2d 370, 378 (Ill. App. Ct. 2001)). In light of the agency's policy of non-enforcement, the state court found that the statute was ineffective. *Id*. (citing *Casualty Ins. Co.*, 753 N.E.2d at 378). There is no indication in this case that the State's Attorney has a policy of non-enforcement of the IEA's criminal provisions.

communications" when it amended the criminal offense indicates that it does not intend for there to be a civil cause of action for eavesdropping upon "electronic communications." Where a legislature specifically provides for one type of recovery, but excludes others, a court can infer that such exclusion was intentional, especially in circumstances such as this, where excluded cause of action is otherwise addressed in the statute. *See Davis*, 545 N.E.2d at 541 (legislature's provision of limited remedies indicates an intent to limit remedies to those provided). Since Illinois' willingness to imply a cause of action into a statute is predicated on its compatibility with the legislature's intent, the Court cannot add a type of recovery that was specifically excluded by the legislature.

Finally, the fourth and most important factor is missing; the statute's protection against eavesdropping upon "electronic communications" can be effectively enforced via criminal prosecutions under § 5/14-2 such that the statute is effective even without a private civil cause of action against such eavesdropping. Moreover, as demonstrated by Plaintiff's instant suit and his request to amend his complaint, both federal law and Illinois' common law provide ample remedial opportunities for those whose electronic communications have been wrongfully captured.

There is no *per se* rule that the existence of a criminal enforcement provision bars the implication of a private cause of action for a statute under the fourth factor, but Illinois courts consider the nature of the statute, whether its purpose can be accomplished without the implication of a private cause of action, and whether the plaintiff's injury can otherwise be remedied. *Rhodes v. Mill Race Inn, Inc.*, 467

N.E.2d 915, 917 (Ill. App. Ct. 1984) (citing *Heimgaertner v. Benjamin Electric Mfg. Co.*, 128 N.E.2d 691 (Ill. 1955); *Burton v. McClellan*, 3 Ill. 434, 437 (Ill. 1840)). Applying those considerations to this case, it would be inappropriate to imply a cause of action for eavesdropping upon "electronic communications."

The IEA is primarily a criminal statute, and eavesdropping upon "electronic communications" is a felony offense. 720 ILL.COMP.STAT. 5/14-4. It does appear that there has been no attempt at prosecution in this case, but none of the cited Illinois cases considering statutes containing public enforcement mechanisms turned on whether the designated enforcement agencies had actually prosecuted or imposed a regulatory penalty. The question is whether the statute as written can be effected, not whether it was effective to prevent or redress the alleged harm in the instant case. The fact that the state's attorney has apparently chosen not to attempt a prosecution in this case is simply an exercise of prosecutorial discretion, and does not prove that the statute is ineffective. The IEA's purpose of preventing eavesdropping upon "electronic communications" can be accomplished through its criminal enforcement mechanism. The Court thus "cannot say that the statutory framework the legislature did provide is so deficient that it is necessary to imply a private right of action for [Plaintiff] in order to effectuate the purpose of the" IEA. *Fisher*, 722 N.E.2d at 1121.

It also relevant whether those who are victims of the statutory violation have other available means of vindicating their injuries. In *Asllani v. Board of Education*, the Northern District of Illinois based its decision not to imply a private cause of action, in part, on the fact that the plaintiff could recover under the Illinois Human

Rights and Title VII if her claims were meritorious. 845 F.Supp. 1209, 1224 (N.D. Ill. 1993). Similarly, the *Cima* court relied on the fact that the "plaintiffs have alternative avenues to vindicate their rights" in determining that an implied cause of action was not necessary. 2006 WL 1914107, 11 (citing *Asllani*, 845 F.Supp. at 1225; *Corgan v. Muehling*, 574 N.E.2d 602, 610 (Ill. 1991)). Here, as Plaintiff's claims and instant requests to amend show, there are several applicable federal statutes and common law theories of recovery of which a victim of eavesdropping upon "electronic communications" could avail himself. The fact that these theories may not ultimately pan out for a plaintiff does not mean that a court must create a cause of action that will give him a victory. In holding that it is not necessary to imply a cause of action for a victim of a statutory violation, courts look to whether the violation of the statute can be redressed under other theories, not whether they would actually be successful for the particular plaintiff in the case before them.

The Court therefore cannot imply a private cause of action under the IEA to redress Plaintiff's alleged injuries. Plaintiff's request to amend his complaint to add common law causes of action will be discussed below.

### PLAINTIFF'S MOTION FOR RECONSIDERATION

In his Motion for Reconsideration, Plaintiff asks the Court to reconsider its decision to bar him from presenting claims based on "use" or "disclosure" of his communications under the ECPA. (Doc. 285). In his Response to Defendant Morgan's Motion for Summary Judgment on the question of whether he could be held civilly liable under the ECPA on a "procurement" theory, Plaintiff, for the first time, stated that he intended to proceed on an ECPA claim for "use" and/or

15

"disclosure" of his communications against at least Defendant Morgan. (Doc. 276 at 10-11). The Court noted that

> [I]n Plaintiff's First Amended Complaint, as well as throughout the litigation of this case, Plaintiff has always alleged only "interception," and, in the case of Defendant Morgan, "direction" of others to intercept (also known as "procurement," discussed above), as the violations of the ECPA he seeks to redress. (276 at 10). Plaintiff, Defendants, and the Court have repeatedly characterized the claims as concerning "interception," and have never addressed the questions of "use" or "disclosure" under the ECPA.

(Doc. 276 at 10-11). The fact that Plaintiff had apparently collected evidence, or even admissions, of "use" or "disclosure" was "not sufficient to put Defendant Morgan (or any of the other Defendants) on notice that they may have to defend claims for "use" or "disclosure," or to inform the Court that such claims were at issue." (Doc. 276 at 11). The Court therefore determined that Plaintiff had forfeited these claims by failing to make them more explicit.

In his instant Motion for Reconsideration, Plaintiff argues that Defendants had adequate notice of his intention to pursue claims based on "use" or "disclosure" because evidence was gathered in discovery and cited in summary judgment briefing that Defendants in fact "used" or "disclosed" Plaintiff's communications. The Court has already considered this argument, finding that "it is neither Defendants' nor the Court's duty to scour his briefs for hints as to additional claims he might be interested in raising." (Doc. 276 at 11). When it became apparent that the parties and the Court understood Plaintiff's ECPA claims to be limited to injuries arising from "interception" of his communications (or its "procurement," in the case of Morgan), Plaintiff should have informed the Court that he also intended to seek redress for his alleged injuries caused by Defendants' "use" or "disclosure" of

his communications. Instead, he allowed Defendants and the Court to persist in the belief that only "interception" or its "procurement" were at issue, complaining only when his "procurement" claim against Morgan eventually foundered on the rocks of the statutory text.

Finally, contrary to Plaintiff's warnings, there will be no need to amend the complaint after trial in order to "conform the pleadings to the evidence," because Federal Rule of Civil Procedure 15(b)(2) provides that such post-trial amendment occurs only "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent." Here, there cannot have been any "express or implied consent of the parties" to try the issues of "use" or "disclosure," as those issues have never been affirmatively presented or litigated. As discussed further below, nothing prevented Plaintiff from moving to amend his complaint as soon as he had gathered the evidence to support these claims, which was, at the latest, over a year ago – his poor strategic decision does not justify drawing out this litigation even further.[7]

Plaintiff's Motion for Reconsideration is thus denied. Plaintiff's request to amend his complaint to add a ECPA claims for "use" or "disclosure" is discussed below.

---

[7] As it stands, the forfeiture of the "use" and "disclosure" claims only affects Plaintiff's claims against Defendant Morgan, as the Court has already determined that the other Defendants "intercepted" Plaintiff's communications within the meaning of the ECPA. The "use" and "disclosure" claims, like the "interception" claim, are subject to the exemptions for consent and actions in the ordinary course of business that will be the subject of the upcoming jury trial, such that Defendants Petrakis and Huffman will be subject to the same liability under "interception" as they would if Plaintiff were allowed to proceed with "use" or "disclosure" claims against them.

## PLAINTIFF'S REQUESTS TO AMEND

In the event that the Court determines that Plaintiff cannot proceed with an IEA claim, Plaintiff requests leave to amend his complaint to add state common law theories, including intrusion upon seclusion and invasion of privacy. Similarly, if the Court declines to reconsider its determination that Plaintiff's First Amended Complaint does not include claims based on "use" or "disclosure," Plaintiff requests leave to add those claims to a new complaint. He asserts that the addition of these theories would require no new discovery, but would instead be predicated solely on facts he has already gathered.

Federal Rule of Civil Procedure 15(a)(2) provides that "The court should freely give leave [to amend a complaint] when justice so requires." However, it is well-established that "[d]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Services*, 588 F.3d 420, 432 (7th Cir. 2009) (citing *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). The Court denies Plaintiff's request to amend his complaint to add new theories and claims.

Plaintiff initiated the instant suit in April 2010, well over three years ago. Pursuant to a scheduling order, all discovery was to have been completed by March 15, 2012. (Doc. 153). Plaintiff now asserts that he adduced all the evidence needed to support his proposed new theories during discovery, such that additional discovery would not be needed. The obvious implication of this is that Plaintiff had all the evidence needed to amend his complaint as he now proposes in March 2012,

one year and four months ago. Plaintiff offers no real explanation for his delay; he merely argues that the Court's rulings since January 2013 somehow necessitate the addition of the new theories.

Essentially, Plaintiff asks the Court to allow him to restructure his case now that he knows that some of his original theories and claims will not be successful. Plaintiff contends that this is only fair because the Court's recent rulings have considerably cut back on his potential to recover. His basic argument is "what's good for the goose is good for the gander:" if Defendants have been allowed to file motions attacking the sufficiency of his claims at a late date, he should be allowed to remedy this damage to his case by stating new, more-viable claims or legal theories. Adding new theories and claims, though, is different from eliminating issues prior to trial. The elements of Plaintiff's claims have always been at issue in this litigation – whether they were resolved prior to trial or by a jury, they have to be resolved, and such resolution must be within the bounds of the applicable law. On the other hand, Plaintiff's request to amend contemplates the addition of new issues to the suit.

The Court is of course cognizant of the fact that federal plaintiffs need not plead legal theories in their complaints, and that the addition of a new theory of recovery, if based on the same alleged injury, does not necessarily add a new "claim." The implication of this is that a new legal theory (unlike a new claim) does not fundamentally change the complaint, and cannot be considered an unfair "surprise" to a defendant.[8] Here, though, nothing prevented Plaintiff from

---

[8]     This distinction is applicable only to the new common law theories, as they could be limited to the same actions and injuries forming the base of Plaintiff's suit

amending his complaint at least at the close of discovery if he discovered evidence that would support different theories of recovery. The notion that Plaintiff was "content" with his "right to present evidence" under Counts I, II, and III, and that he thus "did not file redundant or overlapping claims" does not excuse the delay. (Doc. 284 at 16). There was no such "right to present evidence" as to claims that were not supported by the applicable law – as of December 2012, it appeared to the Court that all the legal issues that could be resolved had been, but that appearance did not create a "right to present evidence" as to defunct theories.[9] Nothing to which he was entitled was taken from Plaintiff by the Court's ruling upon Defendants' Motions for Summary Judgment. While the Court appreciates Plaintiff's attempt to simplify the case by not adding his duplicative theories when it became apparent that they might be available, this was a strategic mistake on his part. Plaintiffs cannot hold theories in reserve, just in case their original strategy does not pan out, and add them when the case starts to look bad. Plaintiff has simply delayed too long by waiting until just a few weeks prior to trial to seek leave to amend.

Moreover, despite Plaintiff's contentions, the Court would almost certainly have to allow Defendants time to conduct additional discovery if it allowed Plaintiff

---

thus far. On the other hand, the "use" and "disclosure" allegations would constitute new claims, as they complain of different conduct and different resulting injuries.

[9]     Even if the Court had declined to consider Defendants' recently-raised arguments, the Court would have had a duty to ensure that the instructions presented to the jury stated the law correctly – Plaintiff might have been able to present all the arguments and evidence he wished, but the jury instructions would have led to the same results that have now been obtained through the Court's rulings. For the sake of simplicity, clarity, and thoroughness of disposition, it is preferable to resolve these legal questions through briefing and written orders, rather than in jury instruction conferences.

to amend, in order to develop any applicable defenses they may have to the new theories, and Defendants would have to be permitted to file new dispositive motions if there were any issues appropriate for the Court's resolution. Plaintiff's proposed amendments would certainly significantly delay the trial. Again, the fact that Defendants' January 2013 Motion for Summary Judgment also delayed the trial is a completely separate issue, as the elements of Plaintiff's claims are always at issue, while the addition of new theories introduces new issues to the case.[10]

The Court therefore denies Plaintiff's requests to amend his complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff's Count II is DISMISSED WITH PREJUDICE, and Plaintiff's Motion for Reconsideration (Doc. 285) is DENIED. This matter will proceed with the Final Pretrial Conference on July 24, 2013 at 11:00 A.M., and jury trial beginning August 5, 2013.

Entered this <u>22nd</u> day of July, 2013.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge

---

[10]     The Court does not herein intend to express its approval of Defendants' late-filed Motions for Summary Judgment and recent introduction of the question regarding the applicability of the IEA within the proposed Final Pretrial Order and proposed jury instructions, but merely to distinguish between untimely actions attacking Plaintiff's existing claims and late additions to the case.